Argued and submitted February 1, judgment of trial court affirmed
February 2, 2008

Larry GEORGE,
individually
and in his capacity as Oregon State Senator
and a member of the 74th Legislative Assembly,
and Ted Abram, individually,
*Appellants,*

*v.*

Peter COURTNEY,
in his capacity as President,
Oregon State Senate,
Jeff Merkley,
in his capacity as Speaker,
Oregon House of Representatives,
Theodore Kulongoski,
in his capacity as Governor, State of Oregon,
and Bill Bradbury,
in his capacity as Oregon Secretary of State,
*Respondents.*

(CC 07C-23988; SC S055663)

176 P3d 1265

James M. Brown, Portland, argued the cause and filed the brief for appellants.

Anna M. Joyce, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

This is a case involving a challenge to the basis on which the Legislative Assembly has called itself into session for a special session scheduled to begin on Monday, February 4, 2008.[1] Plaintiffs, one of whom is a state Senator, are two Oregon citizens. Defendants are the President of the Senate, the Speaker of the House of Representatives, the Governor, and the Secretary of State (hereafter collectively referred to as "the state").

Plaintiffs brought this action against the state in Marion County Circuit Court seeking a declaration that the Oregon Legislative Assembly's plan to hold a supplemental "emergency" session in February 2008 was inconsistent with the biennial session provision set out in Article IV, section 10, of the Oregon Constitution. Plaintiffs' theory was that an emergency legislative session can only be convened in response to a discrete, unforseen crisis constituting an emergency, that no discrete, unforseen crisis emergency existed and that, therefore, the Oregon Constitution does not authorize the Legislative Assembly to call the special session. The trial court dismissed plaintiffs' case on the merits. Plaintiffs then appealed that judgment to the Court of Appeals, which in turn certified the appeal to this court pursuant to ORS 19.405(1).[2] We accepted the certified appeal and, for the reasons that follow, now affirm the trial court's judgment.

The facts are undisputed. At the beginning of the 2007 regular legislative session, the Legislative Assembly adopted Senate Concurrent Resolution 1 (SCR 1). Among other things, the preamble of SCR 1 recited that the Public

---

[1] We have endeavored to hear and decide this case on an accelerated basis to prevent a needless special session, if plaintiffs' challenge to that session is successful, or to assure the members of the Legislative Assembly that the special session is a valid one, if the plaintiffs' challenge is unsuccessful.

[2] ORS 19.405(1) provides:

"When the Court of Appeals has jurisdiction of an appeal, the court, through the Chief Judge and pursuant to appellate rules, may certify the appeal to the Supreme Court in lieu of disposition by the Court of Appeals. The Court of Appeals shall provide notice of certification to the parties to the appeal."

Commission on the Oregon Legislature,[3] a commission created by the Legislative Assembly in 2005, had found after receiving testimony and reviewing documents on the frequency, length, and timing of Oregon's legislative sessions, that

> "the current structure of the legislative sessions does not provide sufficient predictability or certainty for the citizens of Oregon; and

> "* * * even-year sessions will improve the legislature's handling of complex policy issues and related fiscal matters[.]"

After resolving, in the first two sections of SCR 1, that the Legislative Assembly would adhere to certain schedules, timelines, and rules during the 2007 session, the resolution concluded with a final section addressing the findings noted in the preamble:

> "Pursuant to the declarations made in the preamble of this resolution, the Seventy-fourth Legislative Assembly declares that an emergency exists and will continue through February 2008, and the members agree as follows:

> "(a)  In January 2008 the presiding officers shall provide notice to the Legislative Administrator of the intent to invoke ORS 171.015(1) so as to ensure that [a] special session shall convene on February 4, 2008.

> "(b)  The Legislative Administrator shall follow the special session protocol set forth in ORS 171.015.

> "(c)  Upon receipt of the notice described in ORS 171.015(1), so as to convene the special session on February 4, 2008, the presiding officers shall invoke the provisions of section 10a, Article IV[,] of the Oregon Constitution.

> "(d)  Upon convening the 2008 special session, the presiding officers shall ensure that the 2008 special session adjourns sine die no later than February 29, 2008, and that

---

[3] The Commission was established by the Legislative Assembly to

"conduct a review of and make recommendations on all aspects of the legislative branch, including the timing, frequency and length of legislative sessions, legislative procedures and the adequacy of legislative facilities and staffing."

Oregon Laws 2005, chapter 680, section 1(2). Section 2 of the measure sunsetted the Commission on January 8, 2007.

the special session is limited to consideration of the most pressing fiscal and policy issues."

In December 2007, plaintiffs initiated this action. Specifically, plaintiffs sought a declaration that, as framed by SCR 1, the emergency session of the Oregon Legislative Assembly then proposed for early February 2008 violated Article IV, section 10, of the Oregon Constitution.[4] Plaintiffs also sought a temporary injunction restraining (1) the President and the Speaker from convening their respective bodies for the session; (2) the Governor from signing any legislation passed during the session; and (3) the Secretary of State from receiving and recording any legislation enacted during the session.

In a memorandum of law supporting their injunction request, plaintiffs acknowledged that Article IV, section 10a, of the Oregon Constitution—a constitutional amendment referred to and approved by Oregon voters in 1976—authorizes the legislature to convene itself "[i]n the event of an emergency." Plaintiffs asserted, however, that the phrase, "event of an emergency," means a specific, urgent circumstance, exigency, or pressing necessity that requires an immediate response—a situation, plaintiffs contended, that was not present in this case. They argued that,

> "[w]hile the Legislative Assembly's authority to decide what constitutes an 'emergency' necessitating a special session may be broad, the 'event of an emergency' language of Article IV, Section 10(a) is not devoid of meaning. If the voters intended that the 'in the event of an emergency' language of Article IV, Section 10(a) would have no objective meaning at all, then the provisions of Article IV, Section 10 limiting the Legislative Assembly to biennial sessions have been rendered meaningless. That conclusion would be contrary to the fundamental canons of constitutional construction and heretofore unbroken history of the history of [sic] legislative power in Oregon. The voters did not intend to abrogate Article IV, Section 10 when they voted to approve Article IV, Section 10(a). The Legislative Assembly may not schedule, one year in advance, an 'event of emergency' upon which to schedule a Supplemental Session."

---

[4] Both Article IV, section 10, and Article IV, section 10a, are set out in full below.

On January 18, 2008—shortly before the scheduled trial date for plaintiffs' action—the President and the Speaker began the process to convene an emergency legislative session, as set out in ORS 171.015.[5] As a required part of that statutory procedure, the President and the Speaker submitted the following statement of justification for the session to their legislative colleagues:

> "The Legislative Assembly, through the adoption of Senate Concurrent Resolution 1 (2007), determined that the structure of convening the Legislative Assembly in session every odd-numbered year does not provide sufficient predictability or certainty for the citizens of Oregon, and further determined that an even-numbered year session will improve the legislature's handling of complex policy issues and related fiscal matters. In addition, interim committees of the Legislative Assembly have identified specific budget and policy issues that need resolution without delay. We find that these matters constitute an emergency warranting immediate attention by the Legislative Assembly."

Thereafter, the members of the Legislative Assembly were advised of the statement by the President and the Speaker, and were asked whether they wished to convene a session of the assembly. The requisite number of members of each house voted to hold a special session. The President and the Speaker then announced the convening of the special session in a proclamation dated February 1, 2008.

In the trial court, the state argued, in part, that the text, context, and history of Article IV, section 10a, underscored a clear intent to vest the legislature with the sole discretion and authority to determine the existence of an emergency for convening a special session under that provision. The trial court agreed, concluding that such a decision "should be, in nearly all instances, one for the legislature alone to determine." The trial court went on to opine that the identification of "specific budget and policy issues that need resolution without delay" as part of the justification for the special session, although vague, nevertheless was sufficient to meet the threshold requirements of Article IV, section 10a.

---

[5] The full text of ORS 171.015 is set out in the Appendix following this opinion.

Based on that view, the trial court dismissed plaintiffs' complaint. This appeal followed.

■　　　Three provisions of the Oregon Constitution address the scheduling of state legislative sessions. One provision, Article IV, section 10, provides:

> "The sessions of the Legislative Assembly shall be held biennially at the Capitol of the State commencing on the second Monday of September, in the year eighteen hundred and fifty eight, and on the same day of every second year thereafter, unless a different day shall have been appointed by law."[6]

The Governor also has authority to call the Legislative Assembly into session under Article V, section 12, of the Oregon Constitution, which provides:

> "[The Governor] may on extraordinary occasions convene the Legislative Assembly by proclamation, and shall state to both houses when assembled, the purpose for which they shall have been convened."

Finally, Article IV, section 10a, allows the legislature to convene itself, "[i]n the event of an emergency," and pursuant to the written request of a majority of the members of each house:

> "In the event of an emergency the Legislative Assembly shall be convened by the presiding officers of both Houses at the Capitol of the State at times other than required by section 10 of this Article upon the written request of the majority of the members of each House to commence within five days after receipt of the minimum requisite number of requests."

This case concerns the meaning of Article IV, section 10a, an issue raised for the first time in the present proceeding.

Plaintiffs focus their challenge to the legislature's proposed session primarily on the use of the term "emergency" in the text of Article IV, section 10a. They posit that the word refers to specific circumstances that give rise to the

---

[6] A different day has since been "appointed by law": The Legislative Assembly now convenes on "the second Monday in January of each odd-numbered year." ORS 171.010.

need for an immediate response, so that the legislature cannot convene itself in an "emergency" session unless those circumstances are present. Implicit in that proposition is the idea that an "emergency" is an objectively discernable event or series of events and, therefore, that whether such an emergency exists is a question amenable to judicial scrutiny. The state, for its part, focuses on the requirement in Article IV, section 10a, that majorities in both legislative houses must request an emergency session before such a session can be convened. Under the state's interpretation, and regardless of the particular circumstances, an "emergency" exists whenever majorities in both legislative houses so declare. From that premise, the state argues that the question whether an "emergency" exists is reserved for the Legislative Assembly alone and, thus, is beyond the permissible scope of judicial scrutiny. Alternatively, the state agues that, even if the Legislative Assembly's declaration that an emergency exists is amenable to judicial scrutiny, this court should give the greatest possible deference to the Legislative Assembly's determination.

■ Article IV, section 10a, was adopted by the voters pursuant to a legislative referendum, rather than being enacted as a part of the original Oregon Constitution. In such cases, this court applies the interpretive methodology set out in *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 871 P2d 106 (1994). *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 57, 11 P3d 228 (2000) (identifying that case as the appropriate paradigm for such interpretations). Under *Ecumenical Ministries*, this court's task in examining constitutional provisions referred to the people for their approval is to discern the voters' intent in adopting a particular provision. 318 Or at 559.

■ The best evidence of the voters' intent in adopting a particular constitutional provision is the text of the provision itself. *Id.* The context of the provision may also be considered, and includes the text of the ballot measure that gave rise to the provision, *id.*, the text of related ballot measures submitted to voters during the same election, *id.*, and related constitutional provisions that were in place when the provision in question was adopted. *Stranahan*, 331 Or at 62 n 15; *see also Comeaux v. Water Wonderland Improvement Dist.*, 315 Or

562, 569, 847 P2d 841 (1993) (considering such context when interpreting voter-initiated constitutional amendment). If the voters' intent is clear from the text and context of the constitutional provision at issue, this court will not inquire further. *Ecumenical Ministries*, 318 Or at 559. If, however, the voters' intent is not clear after that inquiry, this court will turn to the provision's history. *Id. See also Flavorland Foods v. Washington County Assessor*, 334 Or 562, 575, 54 P3d 582 (2002) (illustrating proposition).

■       We first examine the text of Article IV, section 10a. As noted, that constitutional provision conditions the Legislative Assembly's ability to convene itself on "the event of an emergency." In examining the text of constitutional provisions adopted by initiative or legislative referral, this court typically gives words of common usage their plain, natural, and ordinary meaning. *Coultas v. City of Sutherlin*, 318 Or 584, 588-89, 871 P2d 465 (1994).

■       The word "emergency," by its plain and ordinary meaning, connotes

> "an unforseen combination of circumstances or the resulting state that calls for immediate action * * * as **a** : a pressing need : EXIGENCY * * * **c** : a usu. distressing event or condition that can often be anticipated or prepared for but seldom exactly foreseen[.]"

*Webster's Third New Int'l Dictionary* 741 (unabridged ed 2002). In light of the broad range of tasks that confront legislatures every day, we have no basis for assuming that the voters meant to use the term "emergency" narrowly, *e.g.*, to address, for example, unforeseen emergencies, but not pressing needs. And, if that is true, then the scope of authority granted to the Legislative Assembly seems to us to be plain from the wording of the provision itself: Article IV, section 10a, of the Oregon Constitution authorizes the Legislative Assembly to convene itself in special session at any time other than during a regular session if, in the opinion of the requisite number of legislators, a combination of circumstances has resulted in a need for immediate action, there appears to be a pressing need to convene (whatever the

nature and source of that need), or a distressing event or condition has arisen, even if the possibility of that event or condition had been anticipated.

Nothing in the text of Article IV, section 10a, requires the legislators to consult each other, agree on, or give notice of the circumstances that constitute the emergency. We note, however, that, rather than rely on that broad reading of its power under Article IV, section 10a, the Legislative Assembly has enacted self-limiting legislation that, among other things, addresses those matters.

Specifically, ORS 171.015 sets out the procedures to be followed in requesting a special session. Section (2) of that statute requires that a written notice of intent to invoke Article IV, section 10a, signed by at least one member of each house, be filed with the Legislative Administrator, and that the filing contain "a written statement giving justification of the need for a special session." Section (3) then requires the Legislative Administrator to send to each member of the Legislative Assembly a form allowing the member to declare whether the member does or does not wish to have a special session convened. That form must contain the statement of justification described in subsection (2). The member then indicates on the form whether or not the member wishes to have a special session convened, and returns the form to the Legislative Administrator. Section (4) provides that each form, when returned, constitutes the signing member's irrevocable commitment either to request or not to request a special session. A sufficient number of those requests from each house triggers the calling of a special session.

Plaintiffs do not assert that the procedures set out in either Article IV, section 10a, or in its implementing statute, ORS 171.015, were not followed. And, in light of the fact that the Legislative Assembly has chosen to create more transparency in convening a special session than is required by the wording of Article IV, section 10a, it would seem to follow that the legislature's undisputed conformance with ORS 171.015 more than satisfies any constitutional requirement. Plaintiffs, however, argue otherwise. We address their arguments briefly.

Plaintiffs assert, first, that SCR 1, which plaintiffs claim discloses the real reason that the special session was called, is constitutionally insufficient to serve as the basis upon which the Legislative Assembly may convene itself. That argument is not relevant to the central issue in this case, because the special session is not being called as a legal consequence of SCR 1.[7] Rather, it is being called on the basis of the contents of the January 18, 2008, notices mailed to members of the Legislative Assembly and their votes in response to those notices. SCR 1 may have encouraged the leaders of the two houses to file their notice of intent to invoke Article IV, section 10a, but it did not require them to do so, or restrict them regarding the grounds that they thought might justify the special session. Put more directly: For the purposes of this proceeding, the existence and wording of SCR 1 are irrelevant; *even had there been no SCR 1*, the same legislators could have filed the same notice, with the same justification, and their colleagues could have agreed that a special session should be called.

Plaintiffs argue in the alternative that the reasons advanced by the President and the Speaker in their notice to the Legislative Administrator were insufficient because they lacked adequate specificity. Plaintiffs assert that "the voters are entitled to know the specific reasons asserted by legislators" in convening a special session. That argument also fails. The declaration by the President and the Speaker stated, *inter alia,* that "interim committees of the Legislative Assembly have identified specific budget and policy issues that need resolution without delay." That statement meets two definitions of "emergency"—it demonstrates "an unforseen combination of circumstances or the resulting state that calls for immediate action," and "a pressing need." Article IV, section 10a, of the Oregon Constitution requires no more than the statute. Certainly, nothing in Article IV, section 10a, requires anything like further specificity in the notice of reasons that plaintiffs demand, and there is no basis for this

---

[7] We note that, if the passage of SCR 1 were the relevant event, then plaintiffs' failure to challenge the resolution until 11 months after its enactment would raise serious concerns respecting the possible applicability of the doctrine of laches.

court to insert such a requirement into that provision. Plaintiffs have not shown a violation of the constitution in that respect.

Finally, plaintiffs respond that this court should not focus on that single sentence referring to the existence of budget and policy issues. More specifically, they assert that this court should not assume that that sentence, even if sufficient standing alone, states the true reason that the members of the Legislative Assembly decided to convene in special session. In other words, plaintiffs ask us to look behind the acts of the legislators to weigh and assess the motives behind those acts. Such an exercise of power by this court would be an improper invasion by the judicial branch into the very thought processes of members of a coordinate branch of government. We have not, and we do not, claim such power. Plaintiffs' final argument is not well taken.

The judgment of the trial court is affirmed.

# APPENDIX

## ORS 171.015 provides:

"(1)   When a majority of the members of each house of the Legislative Assembly has cause to believe that an emergency exists and so notifies the presiding officers of each house in the manner described in this section, the presiding officers shall invoke section 10a, Article IV of the Oregon Constitution.

"(2)   Members of the Legislative Assembly may give notice of intent to invoke the provisions of subsection (1) of this section by filing written notice thereof with the Legislative Administrator. The notice shall be accompanied by a written statement giving justification of the need for a special session. The filing may be signed by more than one member of each house but must be signed by at least one member of each house.

"(3)   Upon receipt of a properly signed notice and statement described in subsection (2) of this section, the Legislative Administrator shall send to each member of the Legislative Assembly a form to be signed and returned by the member indicating whether the member requests a special session or does not so request. The form shall be as prescribed by the Legislative Administration Committee and shall contain the text of this section, the names of the members who filed the notice, and the text of the accompanying statement. The form shall be dated and shall bear the date 14 days later, computed as provided in subsection (7) of this section, by 5 p.m. on which date the form must be returned to the Secretary of the Senate or the Chief Clerk of the House of Representatives, respectively, or the person designated to serve in that capacity in order to be counted in determining whether the minimum requisite number of signatures requesting a special session has been obtained. The form sent to the members shall be sent by certified mail, addressee only, return receipt requested.

"(4)   The return of the signed form by a member to the Secretary of the Senate or the Chief Clerk of the House of Representatives or person designated to serve in that capacity constitutes an irrevocable request for or refusal of the special session requested by the members filing under subsection (2) of this section and described in the form.

"(5)   The Secretary of the Senate and the Chief Clerk of the House of Representatives, respectively, or the person designated to serve in that capacity shall verify the signatures in the return form and tally the requests and refusals, note the date and time of the receipt of each returned form. When each receives the requisite minimum number of signed forms agreeing to the special session from members of the house of which the person is an officer, each immediately shall notify the presiding officer of each house.

"(6)   Upon receiving notice from the Secretary of the Senate and the Chief Clerk of the House of Representatives or the person designated to serve in that capacity that the minimum requisite number of signed requests for a special session has been received and verified for both houses, the presiding officers jointly shall convene the Legislative Assembly into emergency session by joint proclamation, fixing the date thereof. The date must be within five days after receipt by the presiding officers of the notice from the Secretary of the Senate and Chief Clerk of the House of Representatives. The original of the proclamations shall be filed with the Secretary of State.

"(7)   The period of time for purposes of subsection (3) of this section shall be computed by excluding the first day and including the last day unless the last day falls on any legal holiday or on Saturday, in which case the last day is also excluded. The period of time for purposes of subsection (6) of this section shall be computed by beginning on the day after which the presiding officers receive the notice described in subsection (6) of this section and ending five days later, regardless of legal holidays or Saturdays."