No. 1 January 15, 2015 639

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

MATTHEW SCOFIELD SAGDAL,
*Petitioner on Review.*

(CC 100545212; CA A146601; SC S061846)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 15, 2014.

Jed Peterson, O'Conner Weber, LLP, Portland, argued the cause and filed the briefs for petitioner on review.

Paul Smith, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the briefs was Ellen F. Rosenblum, Attorney General, Anna Joyce, Solicitor General, and Jeremy Rice, Assistant Attorney General.

BALMER, C. J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Multnomah County Circuit Court, Karin J. Immergut, Judge. 258 Or App 890, 311 P3d 941 (2013).

**BALMER, C. J.**

In this criminal case, we consider whether empanelling a jury of fewer than 10 persons in a misdemeanor prosecution violates Article I, section 11, of the Oregon Constitution. That provision states that, in the circuit court, 10 members of a jury may render a verdict of guilty or not guilty, while a later-enacted constitutional provision, Article VII (Amended), section 9, states that "[p]rovision may be made by law for juries consisting of less than 12 but not less than six jurors." Defendant was charged with reckless driving, a misdemeanor. The trial court refused defendant's request for "a minimum of a ten-person jury" and instead empanelled a six-person jury. Defendant was convicted based on a unanimous guilty verdict. Defendant appealed, and the Court of Appeals affirmed. *State v. Sagdal*, 258 Or App 890, 311 P3d 941 (2013). We allowed defendant's petition for review and now affirm the decision of the Court of Appeals, although our analysis differs in some respects.

Defendant was found in what appeared to be an unconscious state, sitting in his stopped car with the engine running in the left turn lane of a public road. When police arrived, they conducted field sobriety tests, which defendant failed. The police then arrested defendant. At the police station, defendant agreed to take an Intoxylizer alcohol breath test and was found to have a blood alcohol level of 0.30. At his trial in circuit court for reckless driving under ORS 811.140,[1] defendant requested "a minimum of a ten-person jury, under Article 1, section 11 of the Oregon Constitution[.]" The trial court refused, instead empanelling a six-person jury that unanimously found defendant guilty. Defendant renewed his objection to the jury size before and after the verdict, as well as at sentencing.

Defendant appealed his conviction, arguing that the trial court had violated Article I, section 11, by empanelling and accepting a verdict from a jury consisting of fewer than 10 members in a criminal case in circuit court. The

---

[1] Defendant was also charged with driving under the influence of intoxicants, ORS 813.010, but pleaded no contest and entered a diversion program on that charge. Thus, trial was on only the reckless driving charge.

Court of Appeals posed the question presented as whether "the rights established in Article I, section 11, limit the authority granted under Article VII (Amended), section 9, [to empanel a jury consisting of less than 12 but not less than six] to cases other than criminal cases in circuit court." *Sagdal*, 258 Or App at 893. That court reasoned that the intended effect of Article I, section 11, was to permit nonunanimous jury verdicts in felony cases in circuit court, but not to create a right to a jury of a particular size. *Id.* at 898, 901. Article VII (Amended), section 9, on the other hand, was pertinent to jury size and was intended to apply to jury trials in all courts. *Id.* at 901. The Court of Appeals "harmonize[d]" the two provisions by concluding that Article I, section 11, applied to only felony cases in circuit court and that Article VII (Amended), section 9, granted the legislature authority to provide for juries of fewer than 12 persons in misdemeanor cases in circuit court. *Id.* Thus, the Court of Appeals concluded, the trial court had properly empanelled a six-member jury for defendant's misdemeanor case. *Id.*

On review, defendant argues that Article I, section 11, sets a constitutional minimum number of jurors in criminal jury trials in circuit court by using the word "ten" and that the later enactment of Article VII (Amended), section 9, had no effect on that minimum size requirement. Rather, in defendant's view, Article VII (Amended), section 9, is a grant of power to the legislature to provide for smaller juries in some cases, but Article I, section 11, is a restriction on that power: the latter provision prohibits the legislature from permitting juries of fewer than 10 members in criminal cases in circuit court. The state responds that Article VII (Amended), section 9, specifically authorizes the legislature to enact laws providing for juries of fewer than 10 members. In this case, the legislature enacted ORS 136.210(2)[2] to provide for six-person juries in circuit court when the only charges are misdemeanors. In the state's view, Article I, section 11, merely permits nonunanimous jury verdicts in most criminal cases in circuit court, but does not vest a criminal

---

[2] ORS 136.210(2) provides that, "[i]n criminal cases in the circuit courts in which the only charges to be tried are misdemeanors, the trial jury shall consist of six persons."

defendant with a right to a jury of any specific size. Even if it did, the state argues, the conflict between the two provisions would be resolved in favor of Article VII (Amended), section 9, because it was enacted later and is more specific than the relevant part of Article I, section 11.

This case requires us to interpret two constitutional amendments, both adopted by the voters following legislative referral. We interpret referred constitutional amendments within the same basic framework as we interpret statutes: by looking to the text, context, and legislative history of the amendment to determine the intent of the voters. *State v. Reinke*, 354 Or 98, 106, 309 P3d 1059 (2013), *adh'd to as modified on recons*, 354 Or 570, 316 P3d 286 (2013) (referred constitutional amendments are interpreted similarly to interpretation of a statute). Moreover, "[t]he purpose of that analysis is not to freeze the meaning of the state constitution" on the date when the relevant provision was adopted but, rather, to identify "relevant underlying principles that may inform our application of the constitutional text to modern circumstances." *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011).

We focus first on the text and context of a constitutional amendment for an obvious reason: "The best evidence of the voters' intent is the text and context of the provision itself[.]" *State v. Harrell/Wilson*, 353 Or 247, 255, 297 P3d 461 (2013). Context for a referred constitutional amendment includes the historical context against which the text was enacted—including preexisting constitutional provisions, case law, and statutory framework. *State v. Pipkin*, 354 Or 513, 526, 316 P3d 255 (2013); *George v. Courtney*, 344 Or 76, 84, 176 P3d 1265 (2008). However, "caution must be used before ending the analysis at the first level, *viz.*, without considering the history of the constitutional provision at issue." *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 57, 11 P3d 228 (2000); *see State v. Algeo*, 354 Or 236, 246, 311 P3d 865 (2013) ("We focus first on the text and context *** but also may consider the measure's history, should it appear useful to our analysis."). The history of a referred constitutional provision includes "sources of information that were available to the voters at the time the measure was adopted and that disclose the public's understanding of the

measure," such as the ballot title, arguments included in the voters' pamphlet, and contemporaneous news reports and editorials. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559 n 8, 871 P2d 106 (1994); *see generally Pipkin*, 354 Or at 526 (legislative history is examined where it appears useful to the court's analysis). Although legislative history can be helpful, we are cautious in relying on statements of advocates, such as those found in the voters' pamphlet, because of the partisan character of such material. *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 383, 648 P2d 1284 (1982).

We begin with the text of Article I, section 11. The portion of the provision at issue in this case, added to the Oregon Constitution by legislative referral in 1934, adopted a proviso to the right to public jury trial in criminal prosecutions: "provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first-degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]"[3] *See* Or Laws 1933, SJR 4 (2d Spec Sess) (referring amendment to voters); *State v. Osbourne*, 153 Or 484, 485, 57 P2d 1083 (1936) (noting that amendment was adopted in 1934).

The relevant text of Article I, section 11, suggests that the amendment was intended to define the circumstances in a criminal case in which a jury verdict is or is not required to be unanimous, rather than to create a minimum

---

[3] In full, Article I, section 11, provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first-degree murder, which shall be found only by a unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

jury size. First, the text refers to "render[ing] a verdict" rather than empanelling a jury, indicating that the provision relates to the decision that the jury makes rather than the judge's act of empanelling (and thus setting the size of) the jury. "Render" at the time meant "[t]o give up; to yield; to return; to surrender[,]" and a "verdict" was "[t]he formal and unanimous decision or finding made by a jury, impaneled and sworn for the trial of a cause and reported to the court (and accepted by it), upon the matters or questions duly submitted to them upon the trial." *Black's Law Dictionary* 1528, 1807 (3d ed 1933). The phrase "render verdict" meant "[t]o agree on and to report the verdict in due form[, t]o return the written verdict into court and hand it to the trial judge." *Id.* at 1529. *Black's Law Dictionary* also cites a contemporaneous court decision for the proposition that, "[u]ntil accepted by the court, a finding of the jury is not a 'verdict.'" *Id.* at 1807 (citing *Schulman v. Stock*, 89 Conn 237, 532, 93 A 531 (1915)). Thus, the voters would have understood from the text that the 1934 amendment affected the criminal jury's action of agreeing on and then reporting or returning its decision or finding to the court, rather than affecting jury size. Moreover, as the Court of Appeals noted, the text of the 1934 amendment uses the permissive "may"—"ten members of the jury *may* render a verdict"—rather than the directive "must," which is consistent with removing a previously existing restriction. Instead of the previously required unanimous verdict, under the amendment, a valid verdict may be returned by 10 jurors out of 12. *Sagdal*, 258 Or App at 895. The words and sentence structure of the amendment strongly suggest that the reference to "ten members of the jury" is to the number out of a 12-member circuit court jury—then set by statute, as discussed below—required to render a valid verdict, rather than to a minimum jury size requirement.

Second, the "save and except" clause requires a "unanimous verdict" for first-degree murder cases.[4] The "save and except" clause is an exclusion from the general rule found in the prior clause, and its terms illuminate the

---

[4] First-degree murder is the historical analog to aggravated murder. *State v. Rogers*, 352 Or 510, 521, 288 P3d 544 (2012).

meaning of the general rule. *See Black's* at 1583 ("save" meant "[t]o except, reserve, or exempt; as where a statute 'saves' vested rights"). A "saving clause in a statute [was] defined at the time as] an exception of a special thing out of the general things mentioned in the statute; it [was] ordinarily a restriction in a repealing act, which [was] intended to save rights, pending proceedings, penalties, etc., from the annihilation which would result from an unrestricted repeal." *Id.* Because the "save and except" clause requires a "unanimous verdict" in a described subset of all criminal prosecutions, the obvious inference is that the voters intended to authorize nonunanimous verdicts in the cases covered by the general rule. Moreover, the "save and except" clause does not mention jury size.

The context of Article I, section 11, confirms that voters intended it to provide for nonunanimous verdicts. In 1934, all criminal trials in circuit court had 12-member juries. Oregon Code, title XXX, ch 1, § 30-104 (1930) ("A trial jury is a body of persons, twelve in number in the circuit court, and six in number in the county court and courts of justice of the peace[.]"); Oregon Code, title XIII, ch 9, § 13-912 (1930) ("In criminal cases the trial jury shall consist of twelve (12) persons, unless the parties consent to a less number[.]"). Other courts at the time, such as the county courts and justice courts, used smaller juries of six, and "the circuit court [was] the only court employing a jury of twelve[.]" *Osbourne*, 153 Or at 489.

Thus, it appears that the assumption underlying the Article I, section 11, "ten member" requirement to render a verdict is that the requirement applies when the jury has 12 total members; however, because of the practice of having smaller juries in county courts, voters would have understood that juries of fewer than 12 were still constitutionally permissible. *See State ex rel Smith v. Sawyer*, 263 Or 136, 138, 138 n 1, 501 P2d 792 (1972) (noting that the "provision obviously contemplates a jury of twelve persons," but explicitly declining to decide whether Article I, section 11, permits juries of fewer than 12). The voters' intention in adopting the 1934 amendment to Article I, section 11, was not to mandate a jury of 10 or 12 persons, but rather was to

provide for nonunanimity when a jury of 12 was used—as was the practice in circuit court at the time.[5]

In fact, this court explicitly so held shortly after the voters adopted the amendment to Article I, section 11. In 1936, in *Osbourne*, this court considered two challenges to the validity of the then-newly adopted amendment. In one of the assignments of error, a party

> "suggested that, in the event the Legislature should give the district courts[6] general jurisdiction and provide for a jury of twelve therein or should create a court of criminal administration, with jurisdiction over cases generally, as distinct from circuit courts, neither the district court nor the newly created court would be affected by the amendment under discussion, because reference in the amendment is made only to circuit courts. When we remember that the circuit court is the only court employing a jury of twelve, *it is very apparent that this reference to circuit courts is only definitive of the court or courts employing a jury of twelve as distinguished from a jury of six or any number less than twelve*. So understood, it constitutes a constitutional restriction depriving the legislature of the power or authority to give to *any court now existing or hereafter to be created, wherein a jury of twelve is required, the right to demand unanimous verdicts* in any criminal case except those involving a conviction of murder in the first degree."

*Osbourne*, 153 Or at 489-90 (emphasis added). Thus, this court has already held that the reference to "circuit courts" in the amendment to Article I, section 11, was intended to be a reference to any "court or courts employing a jury of twelve as distinguished from a jury of six or any number less than twelve." *Id. Osbourne* confirms our understanding of the

---

[5] This case does not present the question whether Article I, section 11, requires a jury of 12 persons in a *felony* case. The district, county, and justice courts—which used six-person juries in 1934—had jurisdiction over certain misdemeanors, but did not have jurisdiction over felony cases. As discussed, the 1934 amendment to Article I, section 11, was intended to permit nonunanimous juries in circuit courts, which used 12-person juries, but was not intended to change other aspects of the jury trial right. Defendant here was tried for a misdemeanor by a six-person jury; the parties did not brief, and we do not decide, legal issues related to the requirements, including jury size requirements, imposed by Article I, section 11, on felony cases.

[6] District courts were eliminated in 1995, and all district court functions and judges were transferred to the circuit courts. Or Laws 1995, ch 658, § 1.

voters' intent in adopting Article I, section 11: to establish rules for nonunanimous verdicts when a court employs a jury of 12.

Our understanding is also aided by the history of Article I, section 11. The ballot title before the voters referred to a "NON-UNANIMOUS VERDICT CONSTITUTIONAL AMENDMENT" and not to jury size.[7] Official Republican Voters' Pamphlet, Special Election, May 18, 1934, 6. Also in the voters' pamphlet, the argument in favor noted that the purpose of the amendment was "to prevent one or two jurors from controlling the verdict or causing a disagreement[,]" which "not only place[s] the taxpayers to the expense of a retrial which may again result in another disagreement, but congest[s] the trial docket of the courts." *Id*. at 7. Thus, voters would have understood that this constitutional amendment was intended to increase the efficiency of the courts by providing for nonunanimous verdicts.

Furthermore, both the arguments in favor and against were written in a manner that clearly contemplated a jury consisting of 12 members. For example, the argument in favor indicated that "[d]isagreements occasioned by one or two jurors refusing to agree with 10 or 11 other jurors is a frequent occurrence. One unreasonable juror of the 12 * * * can prevent a verdict either of guilt or innocence." *Id.* at 7. The argument opposed advocated that the amendment was "objectionable" because defendants charged with first-degree murder were "allowed the special privilege of no conviction unless 12 jurors unanimously agree; whereas the small fry * * * and all lesser crimes must take his chance on a 10/12 jury." *Id.* at 8. The many references in the voters' pamphlet to a jury size of 12 do not indicate, as defendant asserts, that the proposed amendment would enshrine a minimum jury size of 12 in the constitution, but rather were used solely to illustrate how the new nonunanimous verdict rule would apply and the circumstances in which it would not. Notably,

---

[7] The full ballot title also referred to a "CRIMINAL TRIAL WITHOUT JURY." Official Republican Voters' Pamphlet, Special Election, May 18, 1934, 6. However, that part of the title was in error. *Osbourne*, 153 Or at 486-87. The reference was to an amendment that had previously passed in 1932 allowing for bench trials in certain circumstances and "had no proper place in the title of the amendment under consideration." *Id.* at 486.

neither the argument in favor nor the argument opposed refers to the circuit courts, but simply to the "the court" with a "trial docket" using a jury "in criminal cases." *Id.* at 7-8. Although we use the arguments in the voters' pamphlet with caution due to their political nature, in this case, the same assumption that the 1934 amendment was to apply to only juries of 12 members underlies both sides' arguments.

Defendant argues that the text of the amendment to Article I, section 11, simply provides that "ten" jurors are required to render a verdict of guilty or not guilty in circuit court, and that it nowhere refers to a minimum ratio or percentage of votes required to render a valid nonunanimous verdict. Certainly, voters at the time could have expressed their desire for nonunanimous voting in a different way, perhaps as a ratio, as they previously had elsewhere in the Oregon Constitution. *See* Article VII (Amended), section 5 ("In civil cases three-fourths of the jury may render a verdict." (Adopted in 1910)). Noting the use of a ratio in a different constitutional amendment, defendant asserts that, by specifying "ten" jurors for a verdict of guilty or not guilty, voters intended that minimum jury size to be enshrined in the constitution. We disagree.

Defendant's proposed reading of the 1934 amendment to Article I, section 11, would be an exceedingly subtle and indirect—not to mention confusing—way to introduce a constitutional jury size requirement. Moreover, voters would have been aware that some courts at the time, although not the circuit court, employed juries of six. Thus, if the voters had intended to adopt a jury size requirement, they presumably would have used wording—such as defining a jury as "a body of persons, twelve in number" or "the trial jury shall consist of"—similar to that used in the contemporaneous statutes providing for the jury size in different courts. *See* Oregon Code, title XXX, ch 1, § 30-104 (1930) ("A trial jury is a body of persons, twelve in number in the circuit court, and six in number in the county court and courts of justice of the peace[.]"); Oregon Code, title XIII, ch 9, § 13-912 (1930) ("In criminal cases the trial jury shall consist of twelve (12) persons, unless the parties consent to a less number[.]"). Furthermore, the fact that the provision uses the word "ten" rather than some ratio or percentage strengthens this

court's conclusion from almost 80 years ago that the provision was intended to apply to only "courts employing a jury of twelve." *Osbourne*, 153 Or at 489.[8]

We now turn to Article VII (Amended), section 9. That amendment, referred to the voters by the legislature and adopted by them in 1972, provides, in its entirety, that "[p]rovision may be made by law for juries consisting of less than 12 but not less than six jurors." *See* Or Laws, 1971 SJR 17 (referring amendment to voters); Or Laws 1973, pp 6-7 (noting that amendment was adopted in 1972). As noted, defendant argues that, although the 1972 amendment permits six-person juries in some kinds of cases, it did not change the requirement of Article I, section 11, that "ten" jurors are required to render a valid verdict in a criminal case in circuit court. For the reasons discussed above, defendant's premise is incorrect. The "ten member" reference in Article I, section 11, does not establish a minimum jury size but, rather, permits 10 members of a 12-member jury to render a valid verdict. Even assuming, however, that defendant's interpretation of Article I, section 11, were correct, that jury size requirement would have been changed when Article VII (Amended), section 9, was adopted in 1972.

The text of Article VII (Amended), section 9, indicates that the voters intended to grant the legislature the authority to determine the size of juries (but not below a minimum of six jurors) in all courts and types of cases, but not other authority.[9] The 1972 amendment was phrased in terms of authority being granted to the legislature—

---

[8] The Court of Appeals interpreted the nonunanimity provision of Article I, section 11, to be limited to cases in the circuit courts. *Sagdal*, 258 Or App at 901 ("[W]e conclude that the intent of the amendment was to provide for nonunanimous jury verdicts in felony cases in circuit court[.]"). However, this court clearly stated in *Osbourne* that the constitutional requirement of Article I, section 11, applies to any "court or courts employing a jury of twelve," not simply to courts that happen to be named "circuit court." *Osbourne*, 153 Or at 489. Neither party has asked us to revisit that statement in this case, and we decline to do so.

[9] As noted, defendant was charged only with a misdemeanor; ORS 136.210(2) provides that, in those circumstances, the trial jury shall consist of six persons. In other cases, including felony trials, "the trial jury shall consist of 12 persons unless the parties consent to a less number." ORS 136.210(1). Our holding here is limited to misdemeanor cases, and we express no opinion as to whether and under what circumstances provisions of the Oregon or federal constitutions would impose jury size limitations on trials for nonmisdemeanor charges.

"[p]rovision may be made by law"—to set the size of "juries" between six and 12 "jurors." *See Jory v. Martin,* 153 Or 278, 314, 56 P2d 1093 (1936) ("From the oft-repeated use in the Constitution of the term, 'provided by law', no possible doubt can arise that it means, provided by enactment of the legislative branch of the state, as distinguished from constitutional mandate and from the action of the judicial and administrative or executive branches."). That power is discretionary—the legislature "may" so provide—and the constitutional text is without restriction to particular courts or types of cases. *See Webster's Third New Int'l Dictionary* 1396 (unabridged ed 1971) ("may" means "to have power : be able" and to "have permission to *** have liberty to"); *McIntire v. Forbes*, 322 Or 426, 429-30, 909 P2d 846 (1996) (constitutional text which is "inclusive, not exclusive, with no limits stated" implies that there are no limits). More importantly, the legislative power conferred by Article VII (Amended), section 9, is to provide for juries "consisting of" six to 12 members. To "consist" means to be "composed or made up *** of <coal ~s mainly of carbon>[.]" *Webster's* at 484 (emphasis omitted). Thus, Article VII (Amended), section 9, grants the legislature the authority to determine the size of the jury within the stated limits, but does not grant it authority over any other aspect of juries, such as the number of votes required for a valid verdict.

The history of Article VII (Amended), section 9, confirms that interpretation. First, it would have been clear to voters that this amendment was limited to addressing jury size. The ballot title read "MINIMUM JURY SIZE OF SIX MEMBERS," and the argument in favor in the voters' pamphlet referred to the "historical accident" of juries being "composed of precisely 12." Official Voters' Pamphlet, General Election, Nov 7, 1972, 22-23. The voters' pamphlet also indicated that the amendment would not modify the jury trial rights in Article I. The argument in favor explicitly stated that "[t]he measure does not change the jury trial guarantees in Article I of the Oregon Constitution"— which, of course, would include the nonunanimity provisions of Article I, section 11, discussed above—and the citizen committee explanation stated that the measure "would not change the fundamental right to a jury[.]" *Id.* at 21-22.

Thus, the amendment was limited in scope to jury size and was not intended to reach jury unanimity or other aspects of jury trial rights found in Article I.

Second, there was some confusion in the voters' pamphlet as to the types of cases to which the measure applied. Defendant urges that that confusion should lead us to conclude that Article VII (Amended), section 9, applies to only civil cases. The citizen committee explanation stated the amended provision would apply in "civil and criminal cases," while the argument in favor stated that it would apply only "in civil cases" and "in civil jury trials." *Id.* The argument in favor then somewhat contradicted itself by citing two then-current criminal cases decided by the United States Supreme Court:

> "The United States Supreme Court has recently said, 'The fact that the jury at common law was composed of precisely 12 jurors is a historical accident, unnecessary to effect the purposes of the jury system.' Oregonians should not forego badly needed court reform in deference to this 'historical accident'. The Supreme Court ruled in another case, JOHNSON V. LOUISIANA, that juries of less than 12 are completely permissible under the United States Constitution."

*Id.* at 22. That argument quoted from *Williams v. Florida*, 399 US 78, 102, 90 S Ct 1893, 26 L Ed 446 (1970), and cited *Johnson v. Louisiana*, 406 US 356, 92 S Ct 1620, 32 L Ed 152 (1972). Both were criminal cases. That point of confusion was addressed by an editorial in the Salem Capitol Journal, which explained that the "jury-size bill" was not so limited and that the statements about the amendment applying to only civil trials were erroneous:

> "[A]fter going in and out of [legislative] committees and getting rewritten and rewritten again, it ended up as a jury-size bill [rather than a district court reform bill]. No longer is it limited to district courts but includes the higher-level circuit courts as well. And *no longer is it limited to civil cases, but would apply to criminal cases also.* We know this is so because we've read the legislative committee notes and talked with two staff lawyers who participated in drafting and redrafting.

"Yet the official Voters' Pamphlet contains copy signed by the bill's sponsors which indicates otherwise. Apparently this was written prior to the final amendments. No matter how it happened, it's misleading.

"Anyhow, the proposed amendment *covers all courts and all kinds of cases*, but the legislature itself in the next session could re-limit the matter.

"We recommend its passage despite its confusing and misleading aspects, for it's costly and unnecessary to have big juries for all cases, and the supercautious legislature certainly will retain them for major criminal matters."

*Vote yes on Measure No. 5*, Capitol Journal, § 1 at 4 (November 1, 1972) (emphasis added).

We cannot accept defendant's argument that we should limit the effect of a constitutional amendment that the voters adopted simply because of an editing error in the voters' pamphlet that was clearly at odds with the plain text of the amendment, was contradicted by other statements in the same voters' pamphlet, and was addressed by a contemporaneous newspaper editorial available to the voters. In that situation, it would stretch credulity to conclude that the voters intended Article VII (Amended), section 9, to be limited to civil cases, as defendant suggests. Thus, the text, context, and history of Article VII (Amended), section 9, show that it was intended to grant discretionary authority to the legislature to provide for juries of six to 12 members in all Oregon courts and in both civil and criminal cases, but not to grant authority to legislate as to jury unanimity.

As noted, Article VII (Amended), section 9, relates to only the authority of the legislature to determine the size of juries. The 1934 amendment to Article I, section 11, on the other hand, relates to jury unanimity—not to jury size—and applies in only a "court or courts employing a jury of twelve." *Osbourne*, 153 Or at 489. Where this court has definitively interpreted a constitutional provision, we assume that the voters were aware of our earlier interpretation and would have been explicit if they were seeking to modify the meaning of the provision as interpreted. *See Stranahan*, 331 Or at 61-62 (first level of analysis includes case law interpreting the constitutional provision at issue, because it "helps to

define the parameters of the nature of the rights conferred" by the constitutional provision). Here, there is no indication that, when the voters adopted Article VII (Amended), section 9, they intended to change the pre-existing provision for nonunanimous juries in Article I, section 11.

In sum, we interpret the 1934 amendment to Article I, section 11, to provide that, when a trial court uses a jury of 12, 10 members may render a verdict of guilty or not guilty, except in cases of first-degree murder.[10] That provision does not impose a constitutional requirement for a jury of 10 or more persons in every criminal trial. In this case, defendant was tried in circuit court for a single misdemeanor. The court empanelled a jury of six persons, as directed by the legislature in ORS 136.210(2) and permitted by Article VII (Amended), section 9. Contrary to defendant's argument, the provision of Article I, section 11, that "in the circuit court ten members of the jury may render a verdict of guilty or not guilty" does not apply to this case.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[10] Because the six-person jury in this case was unanimous, we need not decide whether a *nonunanimous* jury of less than twelve persons could be constitutionally permissible. *Cf. Burch v. Louisiana*, 441 US 130, 138, 99 S Ct 1623, 1627, 60 L Ed 2d 96 (1979) (conviction by nonunanimous six-person jury in state criminal trial for nonpetty offense violated right to jury trial under Sixth and Fourteenth Amendments).