Argued and submitted January 17, affirmed October 9, 2013, petition for review allowed February 13, 2014 (354 Or 814)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW SCOFIELD SAGDAL,
*Defendant-Appellant.*

Multnomah County Circuit Court
100545212; A146601

311 P3d 941

Jedediah Peterson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeremy Rice, Assistant Attorney General, argued the cause for respondent. John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Samuel A. Kubernick, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

Defendant appeals a judgment of conviction for reckless driving, ORS 811.140, which was based on a unanimous guilty verdict returned by a six-person jury. Defendant first assigns error to the admission into evidence of two Certificates of Accuracy for Alcohol Breath Testing Equipment, claiming that the admission violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We reject that argument without further discussion.[1] Second, defendant claims that his rights under Article I, section 11, of the Oregon Constitution were violated when the court empaneled a jury of fewer than 10 persons and accepted a verdict from that jury. For the reasons stated below, we affirm.

The facts are not in dispute. One evening, defendant was found in the driver seat of his car, which was running but stopped in the left turn lane of a public road. He appeared to be asleep or unconscious. When police officers arrived, they smelled alcohol on defendant's breath and noticed that his eyes were watery, his eyelids were droopy, and his speech was slurred. After defendant performed poorly on field sobriety tests, he was arrested and transported to the police station. There, defendant agreed to take an Intoxilyzer alcohol breath test, which revealed that his blood alcohol content was 0.30.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, and reckless driving, ORS 811.140.[2] Before trial, defendant requested a jury of at least 10 persons. The court denied his request and empaneled a jury of six persons. At the conclusion of the trial, the jury found defendant guilty of reckless driving.

The issue we address in this case is whether, under Article I, section 11, and Article VII (Amended), section 9, of

---

[1] This issue is controlled by our earlier decisions in *State v. Norman*, 203 Or App 1, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006) (admission into evidence of the certificates, without the oral testimony of the technicians who prepared them, did not violate defendant's confrontation rights under the Sixth Amendment), and *State v. Bergin*, 231 Or App 36, 217 P3d 1087 (2009), *rev den*, 348 Or 280 (2010) (adhering to the disposition of *Norman*).

[2] Defendant pleaded no contest and entered diversion on the DUII charge, proceeding to trial only on the reckless driving charge.

the Oregon Constitution, a defendant in a misdemeanor case has a right to a jury of 10 or more persons. The court empaneled a jury of six persons, as directed by ORS 136.210(2), which provides, "In criminal cases in the circuit courts in which the only charges to be tried are misdemeanors, the trial jury shall consist of six persons." That statute was originally enacted in 1979, under the authority of Article VII (Amended), section 9, which states, "Provision may be made by law for juries consisting of less than 12 but not less than six jurors."

Defendant argues that the enactment of ORS 136.210(2) was not within the authority granted the legislature under Article VII (Amended), section 9, because it is contrary to a criminal defendant's preexisting right under Article I, section 11, to a jury of at least 10 persons. Article I, section 11, provides, in part:

> "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; * * * provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]"

Defendant interprets Article I, section 11, to mean that any criminal defendant tried in circuit court is entitled to a jury of at least 10 persons because 10 persons are required to return a verdict. He argues that Article VII (Amended), section 9, may apply to criminal cases in other courts, but it does not modify or eliminate the Article I, section 11, requirement of at least 10 jurors for criminal cases in circuit court. Because defendant's trial was held in circuit court, he argues that 10 members of the jury were required to render a verdict; therefore, empaneling a six-person jury was improper, and the verdict returned by that jury is invalid.

Resolution of defendant's claim requires that we interpret certain provisions within Article I, section 11, and Article VII (Amended), section 9, of the Oregon Constitution. Both provisions at issue were added to the Oregon Constitution as referred constitutional amendments, so we seek to determine

the voters' intent using the analytical framework set forth in *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993), and *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 57, 11 P3d 228 (2000) (so holding). First, we consider the text and context of the provision, including relevant case law. *Id.* at 56, 61. If the voters' intent is not clear from the text and context, we consider the history of the provision, including "sources of information that were available to the voters at the time the measure was adopted and that disclose the public's understanding of the measure." *Ecumenical Ministries*, 318 Or at 560 n 8. However, "caution must be used before ending the analysis at the first level, *viz.*, without considering the history of the constitutional provision at issue." *Stranahan*, 331 Or at 57.

When two constitutional provisions potentially conflict, our function is to interpret them in a way that "harmonizes" them. *State ex rel Adams v. Powell*, 171 Or App 81, 95-96, 15 P3d 54 (2000), *rev dismissed*, 334 Or 693 (2002) (citing *In re Fadeley*, 310 Or 548, 560, 802 P2d 31 (1990)). Both parties agree that the two constitutional provisions at issue here can be harmonized with each other, but for different reasons. Defendant argues that the two constitutional provisions can be harmonized if Article I, section 11, applies to any criminal case in circuit court, and Article VII (Amended), section 9, is limited to criminal cases in other courts. On the other hand, the state suggests that the two provisions can be harmonized if Article I, section 11, applies to felony cases, which could only be tried in circuit court, and Article VII (Amended), section 9, applies to any case in any court if the law provides for a jury of fewer than 12, but not fewer than six, jurors.

The question reduces to whether, as defendant argues, the rights established in Article I, section 11, limit the authority granted under Article VII (Amended), section 9, to cases other than criminal cases in circuit court. If so, the legislature did not act within its authority when it enacted ORS 136.210(2), providing for six-person juries in misdemeanor cases in circuit court. If, on the other hand,

the legislature's authority under Article VII (Amended), section 9, includes the authority to provide for six-person juries for criminal cases in circuit court, then defendant's six-person jury was proper and its verdict is valid.

## ARTICLE I, SECTION 11

The part of Article I, section 11, at issue states, "[I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]" That part of Article I, section 11, was added to the Oregon Constitution as a referred constitutional amendment, adopted by the voters in 1934. *See* Or Laws 1933, SJR 4 (2d Spec Sess) (referring the amendment to the voters); *State ex rel Smith v. Sawyer*, 263 Or 136, 138, 501 P2d 792 (1972) (noting that the amendment was adopted in 1934).

First, we consider the text of the 1934 amendment. Defendant focuses on the phrase "in the circuit court ten members of the jury may render a verdict of guilty or not guilty[.]" He argues that the provision requires a jury of at least 10 members, because 10 jurors are required to render a verdict. Indeed, the phrase "ten members of the jury" assumes that (1) there is a jury, and (2) the jury is comprised of at least 10 members. The second half of the provision, "save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[,]" does not address the number of persons in the jury, but whether the verdict is unanimous. The word "save" means "[t]o except, reserve, or exempt; as where a statute 'saves' vested rights." *Black's Law Dictionary,* 1583 (3d ed 1933). "Except" means "[t]o take or leave out of consideration, to exclude from a statement, or to omit or withhold." *Id.* at 710. Furthermore, a "saving clause" in a statute is defined as, "an exception of a special thing out of the general things mentioned in the statute; it is ordinarily a restriction in a repealing act, which is intended to save rights, pending proceedings, penalties, etc., from the annihilation which would result from an unrestricted repeal." *Id.* at 1583. If the "saved" part of the 10-person jury verdict provision is

that a verdict of guilty of murder in the first degree must still be unanimous, then it follows that the intended effect of the 1934 amendment was to allow a nonunanimous jury verdict in criminal cases other than murder in the first degree, not to create a right to a jury of a particular size. That interpretation is supported by the fact that a 10-person jury "may" render a verdict. The use of the permissive "may," as opposed to the instructive "must," is consistent with a removal of a restriction that previously existed—that is, instead of continuing to require a unanimous verdict, a valid verdict "may" be returned by 10 jurors out of 12.

Next, we consider the context of the 1934 amendment, including relevant case law. *See Stranahan*, 331 Or at 61. At the time of the 1934 amendment to Article I, section 11, circuit courts had exclusive jurisdiction over felony cases, and concurrent jurisdiction with district courts over misdemeanors punishable by up to one year in jail, a fine of $3,000, or both. *See* Article VII (Original), section 9 ("All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts[.]"); General Laws of Oregon 1925, ch 120, § 1 (granting concurrent jurisdiction over limited misdemeanor cases to district courts). Juries in circuit court were comprised of 12 persons, while juries in district court were generally comprised of fewer than 12 persons. *See State v. Osbourne*, 153 Or 484, 489-90, 57 P2d 1083 (1936) ("[T]he circuit court is the only court employing a jury of twelve * * * as distinguished from a jury of six or any number less than twelve.").

In *Osbourne*, the defendant argued, among other things, that the 1934 amendment violated a criminal defendant's equal protection rights. *Id.* at 488-89. In addressing that argument, the Supreme Court considered whether the 1934 amendment would apply to a district court, or any other court, if such court were to start using 12-person juries. *Id.* at 489. The court decided that, although the provision stated that it applied to criminal cases "in the circuit court," it would nevertheless apply to any criminal case in any court as long as a 12-person jury was required. *Id.* at 489-90. In reaching that conclusion, the court reasoned:

"When we remember that the circuit court is the only court employing a jury of twelve, it is very apparent that this reference to circuit courts is only definitive of the court or courts employing a jury of twelve as distinguished from a jury of six or any number less than twelve. So understood, it constitutes a constitutional restriction depriving the legislature of the power or authority to give to any court now existing or hereafter to be created, wherein a jury of twelve is required, the right to demand unanimous verdicts in any criminal case except those involving a conviction of murder in the first degree."

*Id.*

The court did not explicitly decide whether the 1934 amendment created a right to a minimum jury size of 10 persons. However, its conclusion that the amendment was meant to apply to 12-person juries is consistent with our interpretation of the text—that the amendment was intended to provide for nonunanimous jury verdicts and not to require a minimum jury size. Although the court did not consider the possibility of a jury of fewer than 12 persons in circuit court, the conclusion that the amendment was meant to apply to 12-person juries implies that it was not meant to apply to juries of fewer than 12 persons. Therefore, instead of imposing a minimum requirement of 10 jurors on all criminal cases in circuit court, as defendant argues, the nonunanimous provision of Article I, section 11, simply does not apply to juries of fewer than 12 persons.

The Supreme Court revisited the 1934 amendment in *Sawyer*, 263 Or at 138. In *Sawyer*, the defendant had requested a jury of six persons instead of 12 for his felony trial in circuit court, arguing that, because he had the right to waive a jury under a different provision of Article I, section 11, he also had the right to demand a smaller jury. The court denied the defendant's request, stating that the portion of Article I, section 11, that provides for a 10-person jury verdict "obviously contemplates a jury of twelve persons." *Id.* The court recognized that "the will of the people as expressed in the 1934 amendment" was for the state to have "the advantage of a conviction by a less than unanimous verdict." *Id.* at 139. That further supports the interpretation that the 10-person jury verdict provision of Article I, section 11, was

intended to provide for nonunanimous jury verdicts, not a required minimum jury size.

However, because "caution must be used before ending the analysis at the first level, *viz.*, without considering the history of the constitutional provision at issue," *Stranahan*, 331 Or at 57, we now turn to the historical circumstances surrounding the 1934 amendment of Article I, section 11. In determining the voters' intent when they approved the amendment, we look to the voters' pamphlet and other information that was available to the public at the time of the vote. *Ecumenical Ministries*, 318 Or at 560 n 8. The referral submitted to the voters in the voters' pamphlet stated:

> "CRIMINAL TRIAL WITHOUT JURY AND NON-UNANIMOUS VERDICT CONSTITUTIONAL AMENDMENT—Purpose: To provide by constitutional amendment that in criminal trials any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court 10 members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise."

Official Republican Voters' Pamphlet, Special Election, May 18, 1934, 6.

Similarly, the title of the proposed amendment, as stated on the ballot, read:

> "CRIMINAL TRIAL WITHOUT JURY AND NON-UNANIMOUS VERDICT CONSTITUTIONAL AMENDMENT—Purpose: Authorizing accused, with judge's consent, to waive jury trial, except in capital cases; verdict, except guilty of first degree murder, by 10 circuit court jurors."

*Id.*

The title "NON-UNANIMOUS VERDICT" indicates that its purpose was to allow for nonunanimous jury verdicts, not to require a minimum number of jurors.[3] In addition,

---

[3] Although the title of the proposed amendment included "CRIMINAL TRIAL WITHOUT JURY" on both the ballot and in the voters' pamphlet, the jury waiver provision had already been added to Article I, section 11, in 1932; therefore, the

the arguments in the voters' pamphlet both contemplated a jury of 12 persons, which supports the interpretation that the provision for a 10-person jury verdict referred to a nonunanimous verdict. The argument in favor of the amendment stated that "[t]he proposed constitutional amendment [was] to prevent one or two jurors from controlling the verdict or causing disagreement," because "[d]isagreements occasioned by one or two jurors refusing to agree with 10 or 11 other jurors [was] a frequent occurrence," and "[o]ne unreasonable juror of the 12, or one not understanding the instructions of the court can prevent a verdict either of guilt or innocence." *Id.* at 7. The argument against the amendment stated that "anyone charged with murder in the first degree * * * is allowed the special privilege of no conviction unless 12 jurors unanimously agree; whereas, the small fry * * * must take his chance on a 10/12 jury." *Id.* at 8.

According to the voters' pamphlet, the intent of the 10-person jury verdict provision was to prevent one or two members of a jury from controlling the outcome of the case, which would make obtaining a conviction easier. *Id.* at 7; *Sawyer*, 263 Or at 138 ("It clearly appears from the argument in the Voters' Pamphlet that the amendment was intended to make it easier to obtain convictions.").

Based on the text, context, and historical circumstances surrounding the enactment of the 1934 amendment to Article I, section 11, we conclude that the voters' intent in adopting the 10-person jury verdict provision in Article I, section 11, was to provide for nonunanimous jury verdicts when the jury has 12 members. The amendment was not intended to mandate a minimum number of persons required to comprise a jury. With that interpretation in mind, we now turn to Article VII (Amended), section 9.

## ARTICLE VII (AMENDED), SECTION 9

Article VII (Amended), section 9, was referred by the legislature for popular vote in 1971 and adopted by the voters in 1972. *See* Or Laws 1971, SJR 17 (referring the

---

nonunanimous jury provision was the only amendment under consideration. *See Osbourne*, 153 Or at 486 ("The reference in the foregoing title to 'trial without jury' and waiver by an accused person of trial by jury were pertinent only to an amendment adopted by the people on November 8, 1932; and had no proper place in the title of the amendment under consideration.").

amendment to the voters); *Carey v. Lincoln Loan Co.*, 342 Or 530, 539, 157 P3d 775 (2007) (noting that the amendment was approved by the people in 1972). The full text of the provision states, "Provision may be made by law for juries consisting of less than 12 but not less than six jurors." As previously noted, the best evidence of the voters' intent is the text of the provision itself. *Ecumenical Ministries*, 318 Or at 559. Here, the plain text of the provision unambiguously grants to the legislature the authority to allow for juries as small as six persons, without any explicit limitation of its scope to specific cases or courts. The lack of limitation in the provision's text regarding specific cases or courts generally indicates that none was intended. *Cf. McIntire v. Forbes*, 322 Or 426, 429-30, 909 P2d 846 (1996) (text and context of measure manifest clear legislative intent to facilitate resolution of *all* potential constitutional challenges).

However, as the Supreme Court mentioned in *Shilo Inn v. Multnomah County*, 333 Or 101, 117, 36 P3d 954 (2001), *modified on recons*, 334 Or 11, 45 P3d 107 (2002), a court should not "lightly conclude that the text is so clear that further inquiry is unnecessary." With that admonition in mind, we examine the information available to the voters at the time the measure was adopted.

According to the 1972 voters' pamphlet, the purpose of Article VII (Amended), section 9, was to increase the efficiency of Oregon's court system. *See* State of Oregon Voters' Pamphlet, General Election, Nov 7, 1972, 21 ("This ballot measure will enable the Legislature to determine what classes of cases can be more effectively and efficiently decided by juries of less than 12 jurors."). Unfortunately, the intended scope of the amendment is not easily ascertained from the information in the voters' pamphlet. Although the explanation of the proposed amendment stated that it would apply to both civil and criminal cases, the argument in favor of the amendment stated that the legislature's authority to provide for six-person juries would apply to civil cases only. Voters' Pamphlet at 21, 22. That discrepancy was identified and discussed in a newspaper editorial published less than one week before the vote, which noted that the proposed amendment, as presented in the voters' pamphlet, was "confusing and misleading." *Vote yes on Measure No. 5*, Capital

JOURNAL, Nov 1, 1972, § 1, at 4. In addition, the editorial stated that the argument in favor was incorrect when it asserted that the measure applied to civil cases only. The editorial asserted that the measure "no longer [was] limited to civil cases, but would apply to criminal cases also," noting that the editorial writers had read "the legislative committee notes and [had] talked with two staff lawyers who participated in drafting and redrafting." *Id.* According to the editorial writers, the argument in favor of the measure "was written prior to the final amendments" to the measure. *Id.*

We turn now to other historical circumstances surrounding the enactment of Article VII (Amended), section 9. *See Ecumenical Ministries*, 318 Or at 559. To that end, we examine legislative materials and hearings leading up to the bill that was referred to the people. We do so, not because the legislature's intended meaning is controlling—it is not. *See Shilo Inn*, 333 Or at 129 (only materials presented to public at large elucidate the public's understanding and intended meaning of a measure). Instead, we examine the legislative history in this instance because it confirms what the text of the provision unambiguously declared to the voters—the provision was intended to apply to all courts, including the circuit court.

In 1971, Senate Bill 450 was passed, which made the district court a court of record. Or Laws 1971, ch 623, § 15. However, the bill was not to become effective unless the amendment to Article VII (Amended), section 9, was adopted by the people:

> "This Act shall not become effective unless the Constitution of the State of Oregon is amended by vote of the people at the regular general election in 1972, so as to provide that provision may be made by law for juries consisting of less than 12 but not less than six jurors in courts inferior to the circuit court."

*Id.*

When the measure that eventually became Article VII (Amended), section 9, was introduced in the legislature, it also stated that it was limited to "courts inferior to circuit court." However, when the measure was referred to the people for a vote in 1972, that limiting phrase had been

deleted. House Amendments to SJR 17 (1971) (showing that the phrase had been deleted). The deletion of the limiting phrase resulted in a measure that granted the legislature authority to provide for juries of fewer than 12, but not fewer than six, persons, without any specification regarding which courts would be affected. The deletion of the phrase "courts inferior to circuit court" before referring the measure for popular vote confirms that the measure adopted by the voters was intended to apply to all the courts of Oregon.

### HARMONIZING ARTICLE I, SECTION 11, AND ARTICLE VII (AMENDED), SECTION 9

After considering the text, context, and historical circumstances surrounding the adoption of Article I, section 11, and Article VII (Amended), section 9, we now seek to interpret the two provisions in a way that "harmonizes" them. *Adams*, 171 Or App at 95-96. As previously discussed, when the 1934 amendment to Article I, section 11, was adopted, felonies were heard only in circuit court, and the circuit courts were the only courts using 12-person juries. Considered in that light, we reject defendant's argument that the intent of the people in adopting the 1934 amendment to Article I, section 11, was to provide for 12-person juries in misdemeanor cases in circuit court. Instead, we conclude that the intent of the amendment was to provide for nonunanimous jury verdicts in felony cases in circuit court, in which 12-person juries were used. Furthermore, we conclude that the authority granted to the legislature under Article VII (Amended), section 9, was not intended to be limited to courts other than circuit court. Accordingly, the legislature was authorized under Article VII (Amended), section 9, to provide for juries of fewer than 12 persons for misdemeanor cases in circuit court, as it did in ORS 136.210(2). In this case, the court properly empaneled a six-person jury for defendant's misdemeanor case, and the verdict returned by that jury is valid.

Affirmed.