Argued and submitted June 29, 2015, convictions for fourth-degree assault, strangulation, and interference with making a report reversed and remanded, otherwise affirmed August 17, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## GERARDO CAZAREZ-HERNANDEZ,
aka Gerardo Cazarez,
*Defendant-Appellant.*

Klamath County Circuit Court
1000271CR; A155309

381 P3d 969

Dan Bunch, Judge.

John Paul Evans, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan Zunkel-deCoursey, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carson L. Whitehead, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.*

---

* De Muniz, S. J., *vice* Nakamoto, J.

**DE MUNIZ, S. J.**

Defendant was convicted of fourth-degree assault, ORS 163.160; strangulation, ORS 163.187; and interference with making a report, ORS 165.572.[1] We reject without discussion defendant's assignments of error that the trial court erred by empaneling and accepting a verdict by a jury of six people. *State v. Sagdal*, 258 Or App 890, 311 P3d 941 (2013), *aff'd*, 356 Or 639 (2015). In another assignment of error, defendant asserts that the state did not prove that he received adequately translated *Miranda* warnings in Spanish, and that, as a result, his statements were presumptively involuntary and were required to be suppressed. The state counters that it met its burden of proof and that, in any event, if the trial court erred in admitting the statements, that error was harmless. For the reasons explained below, we conclude that the state failed to meet its burden to proof that defendant received adequate *Miranda* warnings, translated in Spanish, and thus, the trial court erred in admitting defendant's statements. We also conclude that the admission of defendant's statements was not harmless. Accordingly, we reverse and remand.

We begin with the appropriate standard of review. The admissibility of defendant's statements made during custodial interrogation is an issue of law. *State v. James*, 339 Or 476, 481, 123 P3d 251 (2005). Article I, section 12, of the Oregon Constitution[2] protects a suspect subject to custodial interrogation from being compelled to provide information that can later be used against the person in a criminal prosecution. *Miranda* warnings are required to ensure that the suspect is aware of that right and the right to an attorney. A suspect who does not understand the rights conveyed to him or her by the *Miranda* warnings has not validly waived them. *State v. Ruiz*, 251 Or 193, 195, 444 P2d 32 (1968).

The state has the burden to prove, by a preponderance of the evidence, that any statements by a defendant were voluntarily made. *State v. Tanner*, 236 Or App 423,

---

[1] Defendant was charged with two counts of fourth-degree assault; however, one count was dismissed at trial.

[2] Article I, section 12, provides that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself."

430, 236 P3d 775 (2010). A defendant's statements may be suppressed as involuntary if the defendant's *Miranda* rights were violated. *Id.* In reviewing the voluntariness of defendant's statements, we are bound by the trial court's express or implicit findings of historical fact if they are supported by any evidence in the record. *State v. Lunacolorado*, 238 Or App 691, 693, 243 P3d 125 (2010). However, "we assess anew whether th[ose] facts suffice to meet constitutional standards." *State v. Holcomb*, 213 Or App 168, 173, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (citing *James*, 339 Or at 481).

We state the following facts consistently with those standards. On January 30, 2010, at around 11:30 p.m., defendant went to the apartment of his former girlfriend. Defendant argued with his former girlfriend and she repeatedly asked him to leave, but he refused. A physical altercation ensued, and defendant, at one point, pushed his former girlfriend against a wall, held her sweater against her in a manner that cut off her circulation, and hit her. Defendant eventually left.

At around midnight, Deputy Miller, Marshall Broussard, and Corporal Fore went to defendant's home to investigate the incident. When Miller arrived, he observed that defendant's car was still warm to the touch. They knocked on defendant's door and could hear someone inside, but no one came to the door. Broussard was familiar with defendant and knew that his relative, Garcia, lived nearby. Garcia had previously worked with the police department as an interpreter. Miller asked Broussard to contact Garcia and ask her to come to defendant's home. Garcia arrived, called defendant on his cell phone, and persuaded him to open the door. Immediately after defendant stepped outside, Miller placed defendant in handcuffs. Miller began addressing defendant in English, and defendant stated that he did not understand English. Miller provided Garcia with a prepared card with the *Miranda* warnings written on it, and Garcia read the card in Spanish to defendant.[3] Garcia told Miller that defendant said that he understood.

---

[3] It is not clear from the record whether the card was written in English or Spanish. The card itself was not offered as evidence during the suppression hearing.

Miller then proceeded to question defendant with the assistance of Garcia. Defendant told Miller that the last time he drove his car was at approximately 7:00 p.m. that evening when he saw Miller making a traffic stop. That statement conflicted with Miller's sighting of defendant in his car at around 8:30 p.m. Defendant claimed that he had been sleeping until Garcia woke him up, and he denied going to his former girlfriend's apartment. At trial, defense counsel moved to suppress those statements by defendant.

At the suppression hearing, the state's sole witness was Miller. He testified that he had Broussard contact Garcia because he was aware that she had worked with the police previously in providing translation services. He stated that Garcia read the *Miranda* warnings to defendant in Spanish from a prepared card, and that Garcia had told him that defendant said that he understood. On cross-examination, Miller admitted that he had no knowledge of whether Garcia was a court-certified interpreter, that he does not speak fluent Spanish, and that he had no idea what Garcia translated. Defendant argued that his statements were presumptively involuntary because the state failed to prove that the *Miranda* warnings were adequately conveyed in Spanish. Specifically, defendant focused on the fact that the state had not called Garcia as a witness and had not admitted the translation of the *Miranda* warnings that were provided to defendant. The trial court rejected defendant's argument and admitted defendant's statements.

On appeal, defendant renews his argument that there is no evidence to support the trial court's implicit finding that defendant received adequate *Miranda* warnings. Defendant contends that there was no evidence of what concepts were actually translated to him in Spanish, and thus, the state failed to meet its burden of demonstrating that defendant received adequate *Miranda* warnings.

The state counters that the trial court did not err in admitting defendant's statements because it concluded that the *Miranda* warnings were adequate based on several permissible inferences: (1) Garcia translated the required *Miranda* concepts because she read them from a prepared card; (2) Garcia was an adequate translator because she had

been used by the police previously; and (3) defendant understood the *Miranda* warnings because Garcia told Miller that he did.

The state relies primarily on *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), for the proposition that we will presume that the trial court found facts in a manner consistent with its ultimate conclusion, provided that there is evidence in the record to support the implicit findings. *Ball* "allows us to infer a finding of fact that the trial court does not expressly make when there is conflicting evidence about a fact that is a necessary predicate to the court's conclusion." *Lunacolorado*, 238 Or App at 696. Our analysis focuses on "whether there was adequate evidence in the record to support that (implicitly found) fact." *Id.* at 697.

The parties agree that *Miranda* warnings were required because defendant was in custody when Miller questioned him and the questioning was interrogation. The issue on appeal is whether the state met its burden at the suppression hearing to prove that the required *Miranda* warnings were adequately translated to defendant in Spanish. "When a translation of the *Miranda* warnings has been given, our inquiry is whether the concepts have been expressed rather than whether the words have been accurately translated." *State v. Corona*, 60 Or App 500, 505, 655 P2d 216 (1982). The warnings must convey to the defendant that "he or she has a right to remain silent and to consult with counsel and that any statements that the person makes may be used against the person in a criminal prosecution." *State v. Vondehn*, 348 Or 462, 474, 236 P3d 691 (2010). As noted above, the state bears the burden of proving by a preponderance of the evidence that the defendant made a knowing, intelligent, and voluntary waiver before any statement will be admissible. *State v. McGrew*, 38 Or App 493, 498, 590 P2d 755, *rev den*, 286 Or 149, *cert den*, 444 US 867 (1979).

In this case, the record on defendant's motion to suppress is scant and contains no evidence that could support the implicit finding that the *Miranda* concepts Garcia translated to defendant were constitutionally adequate. Although the record alludes to a prepared *Miranda* card, there is no evidence of the information that was contained on that card.

There is also no evidence of how or if the information from the card was communicated to defendant because there was no evidence of what Garcia said to defendant in Spanish. Therefore, there is no evidence from which the trial court could have made the implicit finding that the *Miranda* concepts were adequately translated to defendant. Accordingly, the state failed to prove that defendant's statements were voluntary, and the trial court erred when it did not suppress them.

Next, we address whether the trial court's error in admitting defendant's presumptively involuntary statements was nonetheless harmless. Our analysis turns on the possible influence that those statements had on the verdict and not on whether proof of defendant's guilt was compelling even without the statements. *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). Defendant testified at trial, and the state impeached him using the admitted statements. The state made the following statements to the jury during its closing argument:

> "The reason I'm telling you about these inconsistencies is because you use these inconsistencies when you decide [whom] you're going to believe * * * You've heard two different stories. You heard three witnesses get up there and tell you what he did, and then you heard him say, nope, he didn't do it, didn't do it.
>
> "* * * * *
>
> "A witness who lies under oath in some part of his or her testimony is likely to lie in other parts of his or her testimony. Therefore, if you find that a witness has lied in some part of his or her testimony, then you may distrust the rest of that witness['s] testimony."

The state focused on the following three statements made by the defendant during interrogation: (1) that defendant had been asleep when Miller first arrived at his house; (2) that defendant had not driven his car since 7:00 p.m. on the night of the incident; and (3) that defendant had not gone to his former girlfriend's apartment the night of January 30, 2010. Those statements conflicted with Miller's sighting of defendant around 8:30 p.m. and the fact that defendant's car was still warm when Miller arrived at defendant's home.

Defendant's statements were also inconsistent with his former girlfriend's and her roommate's testimony and his own trial testimony. Defendant's credibility was likely essential to the jury's guilty verdicts. An erroneous admission of evidence tending to affect "the jury's all-important assessment of credibility" is not harmless. *State v. Irons*, 162 Or App 512, 524, 987 P2d 547 (1999); *see also State v. Avila-Nava*, 257 Or App 364, 373, 306 P3d 752 (2013). Therefore, the trial court's erroneous admission of defendant's statements made during interrogation was not harmless.

In sum, there was no evidence in the record to support the trial court's implicit finding that the *Miranda* concepts were adequately translated in Spanish to defendant. Therefore, the trial court erred in admitting the statements that defendant made during custodial interrogation because the state did not carry its burden to demonstrate that defendant knowingly waived his constitutional rights. That error was not harmless because the state used those statements to impeach defendant at trial, and we cannot say that there is little likelihood that the admission of those statements affected the jury's verdicts. Accordingly, we reverse and remand for a new trial.

Convictions for fourth-degree assault, strangulation, and interference with making a report reversed and remanded; otherwise affirmed.