Argued and submitted April 7, reversed and remanded August 2, petition for review allowed December 14, 2017 (362 Or 281)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LINUS KORBIN NORGREN,
*Defendant-Appellant.*

Washington County Circuit Court
C142869CR; A159441

401 P3d 1275

Ryan T. O'Connor argued the cause for appellant. With him on the briefs was O'Connor Weber LLP. Linus Korbin Norgren filed the supplemental brief *pro se.*

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sara F. Werboff, Caitlin Mitchell, and Jordan R. Silk, filed the brief *amicus curiae* for Oregon Justice Resource Center.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for attempted murder, ORS 163.115 and ORS 161.405, and three counts of second-degree assault, ORS 163.175. Defendant raises two assignments of error. In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress his statements to a deputy sheriff, because defendant did not voluntarily, knowingly, and intelligently waive his *Miranda* rights.[1] For the reasons that follow, we reverse and remand.

We review a trial court's denial of a motion to suppress for legal error. "We are bound by the trial court's findings of fact if there is sufficient evidence in the record to support them." *State v. Doyle*, 262 Or App 456, 458-59, 324 P3d 598, *rev den*, 355 Or 880 (2014) (citing *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)). We limit our review to evidence presented at the suppression hearing, *State v. Mazzola (A139257)*, 238 Or App 201, 203, 242 P3d 674 (2010), and recite the facts consistently with the trial court's expressed and implied findings.

Deputy Wheaton encountered defendant in the woods on the edge of an old logging road; defendant was unconscious and lying naked in the fetal position. A man was on the opposite side of the roadway, pointing his rifle at defendant. Wheaton and another officer confirmed that defendant was breathing, rolled him over, and handcuffed him. At that point, defendant started "to come to," and "it was very clear that he was awake at that point." Wheaton observed that defendant's nose, hands, and feet were bleeding.

As soon as Wheaton stood defendant up, he read defendant his *Miranda* rights from a prepared card. Wheaton asked defendant whether he understood his rights, to which defendant responded, "Yes." Defendant then made incriminating statements and told Wheaton that "he was a sasquatch and he was from a family of sasquatches."

---

[1] In his second assignment of error, defendant argues that the trial court erred in overruling defense counsel's objection to improper prosecution argument in rebuttal. Our disposition obviates the need to address that assignment of error.

Defendant filed a pretrial motion to suppress his statements to Wheaton, arguing that his statements were inadmissible under both the state and federal constitutions. At the suppression hearing, the state's sole witness was Wheaton. While Wheaton was testifying about his exchange with defendant, the following colloquy transpired:

"[PROSECUTOR]: Did [defendant] make any statements to you that gave you any concern about whether or not he understood what you were discussing and what you were saying?

"DEPUTY WHEATON: He only made one statement * * * or * * * generalization of statements that was out of what I would consider the ordinary.

"[PROSECUTOR]: Can you expand on that a little bit?

"DEPUTY WHEATON: The only thing that—that I found odd * * * was he said that he was a sasquatch and he was from a family of sasquatches. But that, although odd, at the time, at least seemingly, the method in which he communicated it was very clear. * * * [H]e wasn't mumbling, he wasn't half asleep, he was very alert and awake."

Wheaton testified that he spent approximately five and a half hours with defendant and that—other than the sasquatch comment—defendant answered all of his questions clearly and articulately. Wheaton also testified that, eventually, defendant was transported to a hospital where he was interviewed by the Mental Health Response Team and Deputy Garland; Garland's report concluded that "it was obvious from some topics and statements that [defendant] was having a break from reality."

In response, in addition to his own testimony, defendant presented testimony from his mother, father, and brother, who testified regarding defendant's unusual behavior leading up to and on the morning of the incident. Defendant's mother testified that defendant was on a medical leave of absence from the University of Oregon in an effort to address his mental health. Defendant had previously been hospitalized, received counseling, and was off his medication so that he could try other methods of help. Defendant's mother testified that she noticed defendant becoming manic the day before the incident and that she

had called defendant's doctor "to ask them what [she] could do." Because defendant's doctor told her that she could not give defendant his previously prescribed medication, defendant's mother planned to call his psychiatrist the next morning. Similarly, defendant's father and brother testified that defendant was exhibiting signs of mania prior to the incident. Defendant's brother testified that, on the morning of the incident, defendant entered his room, rambling incoherently. Defendant became frustrated that his brother could not understand him, and defendant slammed his palm against a window, breaking the window and injuring his hand. Although defendant's hand was bleeding from shattering the window, he removed his clothing and fled naked from his home.

The trial court denied defendant's motion to suppress, finding:

"I think this comes down to a basis of credibility, and I believe the police officer. The police officer didn't notice anything unusual, other than that statement about the Sasquatch.

"And so I'm going to find that he was properly given his Miranda rights and that he answered the questions in a way that appeared to be responsive to the questions that were answered."

The court then issued an order with written findings consistent with its findings made at the suppression hearing.

On appeal, defendant argues that the trial court erred in denying his motion to suppress. Defendant contends that his waiver of his *Miranda* rights was not voluntary, knowing, and intelligent because "defendant was in the active throes of a psychotic break from reality." In response, the state argues that the trial court correctly denied defendant's motion to suppress, because the court properly concluded that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

The parties do not dispute that *Miranda* warnings were required because defendant was in custody when Wheaton interrogated him. The issue on appeal is whether the state met its burden at the suppression hearing to prove that defendant's waiver of his *Miranda* rights was voluntary,

knowing, and intelligent. *See State v. Cazarez-Hernandez*, 280 Or App 312, 317, 381 P3d 969 (2016) ("[T]he state bears the burden of proving by a preponderance of the evidence that the defendant made a knowing, intelligent, and voluntary waiver before any statement will be admissible.").

Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." Accordingly, Article I, section 12,

> "protects a suspect subject to custodial interrogation from being compelled to provide information that can later be used against the person in a criminal prosecution. *Miranda* warnings are required to ensure that the suspect is aware of that right and the right to an attorney. A suspect who does not understand the rights conveyed to him * * * by the *Miranda* warnings has not validly waived them."

*Cazarez-Hernandez*, 280 Or App at 314 (citing *State v. Ruiz*, 251 Or 193, 195, 444 P2d 32 (1968)). "A waiver not only must be 'voluntary in the sense that it was the product of a free and deliberate choice,' it must also be" knowing and intelligent in that the waiver must be "'made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" *State ex rel Juv. Dept. v. Deford*, 177 Or App 555, 572-73, 34 P3d 673 (2001) (quoting *Colorado v. Spring*, 479 US 564, 573, 107 S Ct 851, 93 L Ed 2d 954 (1987)); *see State v. Anderson*, 285 Or App 355, 356 n 1, 396 P3d 984 (2017) ("Although Article I, section 12, confers protections independently of protections set out in the federal constitution, Oregon courts generally consider Article I, section 12, and the Fifth Amendment together when construing the right against self-incrimination[.]").

> "The knowing and intelligent prong of the waiver analysis tests whether, under the totality of the circumstances, the defendant knew that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. The inquiry necessarily *focuses primarily on the defendant's state of mind*, rather than on police conduct[.]"

*Deford*, 177 Or App at 573 (internal quotation marks and citation omitted; emphasis added). Thus, "[o]nly if the 'totality

of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Spring*, 479 US at 573 (quoting *Fare v. Michael C.*, 442 US 707, 725, 99 S Ct 2560, 61 L Ed 2d 197 (1979)).

We conclude that the trial court erred in denying defendant's motion to suppress. As noted, in determining whether defendant knowingly and intelligently waived his *Miranda* rights, the inquiry focuses on defendant's state of mind. In concluding that defendant knowingly and intelligently waived his *Miranda* rights, the trial court stated, "[Wheaton] didn't notice anything unusual, other than that statement about the Sasquatch." However, considering the totality of the circumstances, we conclude that there was legally insufficient evidence to demonstrate that, at the time Wheaton read defendant his *Miranda* rights, defendant's state of mind was such that he maintained the requisite level of comprehension to waive his rights. Wheaton encountered defendant in a heavily wooded area, bleeding, unconscious, and lying naked in the fetal position. Then, immediately upon handcuffing defendant and standing him up, Wheaton read defendant his *Miranda* rights. Defendant subsequently made incriminating statements and told Deputy Wheaton that "he was a sasquatch and he was from a family of sasquatches."

We consider defendant's statement to Wheaton made at the time of waiver that defendant "was a sasquatch and he was from a family of sasquatches" particularly significant to our conclusion that defendant's waiver of his *Miranda* rights was not knowing and intelligent. Wheaton's testimony does not allow an inference that defendant made that statement facetiously or that defendant otherwise did not believe the statement to be true when he made it. To the contrary, the evidence, including Wheaton's testimony that a Mental Health Response Team interviewed defendant, and that Garland concluded that "it was obvious from some topics and statements that [defendant] was having a break from reality," indicates that defendant could not have understood the rights conveyed to him by the *Miranda* warnings.

Given the legal requirements noted above related to waiver that require consideration of defendant's mental state to determine whether the waiver is made knowingly and intelligently, we conclude that, under the circumstances of this case—including defendant's mental health issues, that Wheaton encountered defendant in a remote wooded area, unconscious and lying naked in the fetal position, and defendant's statement that he was a sasquatch from a family of sasquatches—defendant's waiver was not knowingly and intelligently made. We do not mean to imply that any variant statement made by a person at the time of a waiver nullifies a waiver, only that in the context of the totality of circumstances at play in this case, our inquiry—which focuses on defendant's state of mind to determine whether he maintained the requisite level of comprehension to waive his rights—compels the conclusion that, here, defendant's waiver was not made knowingly and intelligently.

Therefore, on this record, we conclude that there was legally insufficient evidence to demonstrate that defendant's *Miranda* waiver was made with full awareness both of the nature of the rights being abandoned and the consequences of defendant's decision to abandon those rights. Accordingly, we conclude that defendant did not knowingly and intelligently waive his *Miranda* rights and the trial court erred in denying defendant's motion to suppress. *Cf. United States v. Betters*, 229 F Supp 2d 1103, 1107 (D Or 2002) (holding that the defendant did not knowingly and intelligently waive her *Miranda* rights when she was "highly intoxicated from alcohol, possibly under the influence of another drug, off her psychotropic medications, and likely in a manic state").[2]

We next consider whether erroneously admitting defendant's statements was harmless. "Our analysis turns on the possible influence that those statements had on the verdict and not whether proof of defendant's guilt was compelling even without the statements." *Cazarez-Hernandez*, 280 Or App at 318. Defendant argues that the error was not harmless because his statements were central to the state's

_____

[2] Because we conclude that defendant did not knowingly and intelligently waive his *Miranda* rights, we need not decide whether defendant voluntarily waived those rights.

case and the state relied on his statements in closing argument. The state does not argue that erroneous admission of defendant's statements was harmless. On this record, we cannot conclude that the trial court's erroneous admission of defendant's incriminating statements was harmless.

Reversed and remanded.