80 April 29, 2026 No. 339

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DOUGLAS NELSON MYERS II,
aka Nelson Douglas Myers II, aka Myers Douglas Nelson,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR42395; A180770

Andrew M. Lavin, Judge.

Submitted December 19, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Powers, Presiding Judge, Shorr, Judge, and Pagán, Judge.*

POWERS, P. J.

Affirmed.

_____

* Shorr, Judge *vice* Armstrong, Senior Judge.

## POWERS, P. J.

In this criminal case, defendant appeals from a judgment of conviction for reckless driving, ORS 811.140, and a supplemental judgment awarding restitution.[1] In his first assignment of error, defendant challenges the trial court's denial of his motion to suppress, asserting that he was in compelling circumstances when the officer asked him questions and that he was too intoxicated to waive his *Miranda* rights and to consent to a blood test. In his second assignment, defendant contends that the court erred in ordering restitution without a jury trial, in violation of Article I, section 17, of the Oregon Constitution. We first conclude that the trial court did not err in denying defendant's motion to suppress because, given the circumstances, there was not a "police-dominated atmosphere" such that *Miranda* warnings were required. We further conclude that the state carried its burden of proving that, although it is undisputed that defendant was intoxicated, he nonetheless waived his rights. Second, we conclude that the court did not err in denying defendant's motion for a jury trial on restitution because the restitution proceeding in ORS 137.106 is not a "civil" case for purposes of Article I, section 17. Accordingly, we affirm.

Beginning with defendant's first assignment of error, we review a trial court's ruling on a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In so doing, we are bound by the court's factual findings if there is constitutionally adequate evidence to support them. *Id.* If the court did not make express findings of fact on all pertinent issues, we "presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.* We set out the background facts adduced at the suppression hearing with that standard of review in mind.

One evening, Officer Byrd responded to a call about a car crash. Arriving at the scene, Byrd saw that a car had crashed into a power pole such that it was "completely sheared

---

[1] ORS 811.140 has been amended since the underlying conduct in this case. Or Laws 2023, ch 158, § 2. Because that amendment does not affect our analysis, we refer to the current version of the statute in this opinion.

off and being held up by the power line itself" and that a black Jeep was "totaled" and surrounded by a field of debris. He also saw a man—later identified as defendant—"staggering away" from the crash site, and a bystander told him that the man staggering away was the driver of the Jeep. Byrd followed defendant, who was unaware of Byrd's presence. Defendant sat down on the grass in a pedestrian walkway on a dead-end street not far away from the crash site. Byrd observed defendant, who was sitting facing away from Byrd, "kind of swaying all over the place. He had very poorly-articulated hand movements, kind of fumbling around with the phone." Byrd further explained that he could hear defendant's "slurred speech" and could smell alcohol when he was 10 feet away from defendant. While waiting for another officer to arrive, Byrd did not say anything to defendant.

When asked a direct examination question as to whether defendant was free to leave at this point, Byrd responded, "I had not spoken to him at that point. Had he gotten up, or eventually he did turn around and see me, but I did not announce my presence or anything. I was just standing there. So, yeah, potentially he could have gotten up and walked away." Eventually defendant turned around and saw Byrd. Byrd did not recall if the second officer had arrived yet or if defendant knew there were two officers present.

Byrd then introduced himself to defendant and asked him how much he had had to drink and why he had not stayed with his vehicle. Defendant told Byrd that "the other driver left the crash and that he had not had that much to drink." Deciding that he had probable cause to arrest, Byrd took defendant into custody and gave him *Miranda* warnings. Byrd asked defendant if he understood his *Miranda* rights, and defendant confirmed that he did. According to Byrd, the entire interaction from when he first directly interacted with defendant to when he arrested him and gave him *Miranda* warnings was "[p]retty quick. Just a couple of minutes."

As they walked back to the crash scene where Byrd parked his patrol car, defendant continued talking unprompted, including admitting that he had been driving 30 miles per hour when the crash occurred. When they

returned to Byrd's patrol car, the officers called an ambulance. While the medics examined defendant, Byrd read him the consent form for a blood test. Defendant told Byrd that he would take a blood test, and defendant announced his consent a second time so that the medics could hear. Byrd observed that, based on his interactions with him, defendant appeared "lucid" and gave "appropriate answers to questions."

Based on the car crash and defendant's blood test results, defendant was charged with DUII and reckless driving, and he pleaded no contest to DUII and entered diversion. Defendant then litigated his motion to suppress his pre- and post-*Miranda* statements and his blood test results. In his motion to suppress, defendant argued that he was in compelling circumstances when Byrd first asked him questions, that he did not knowingly and intelligently waive his *Miranda* rights because he was too intoxicated, and that he was too intoxicated to voluntarily consent to the blood draw. The trial court denied defendant's motion.

In denying his suppression motion, the trial court first concluded that defendant was not in compelling circumstances when Byrd questioned him and thus that defendant's pre-*Miranda* statements were admissible. Second, the court determined that defendant's post-*Miranda* statements were admissible because defendant indicated that he understood the *Miranda* warnings and showed his willingness to speak to the officer by simply volunteering information rather than answering a specific question. Although the court acknowledged that defendant was intoxicated, it found that defendant's statements were "context appropriate" and concluded that defendant's *Miranda* waiver was knowing, intelligent, and voluntary. Finally, the court concluded that the consent to the blood draw was voluntary for the same reasons.

After the trial court denied his motion to suppress, defendant entered a conditional no contest plea to the reckless driving charge, preserving his right to appeal from the denial of his motion to suppress. This timely appeal, which challenges only the court's suppression ruling and the reckless driving conviction, follows.

On appeal, defendant renews his three arguments: (1) that he was in compelling circumstances that required *Miranda* warnings when Byrd began questioning him; (2) that he did not validly waive his *Miranda* rights because his extreme intoxication prevented him from understanding his rights; and (3) that, for the same reasons, he did not voluntarily consent to the seizure and subsequent search of his blood. For the following reasons, we conclude that the trial court did not err when it denied his motion to suppress.

We begin with defendant's argument that he was in compelling circumstances when Byrd questioned him. To protect a person's right against compelled self-incrimination under Article I, section 12, of the Oregon Constitution, *Miranda* warnings must be given before questioning when a person is in full custody or in compelling circumstances. *State v. Roble-Baker*, 340 Or 631, 640, 136 P3d 22 (2006). When deciding whether a defendant's encounter with police officers constitutes compelling circumstances, we consider several factors, including: (1) the location of the encounter, (2) the length of the encounter, (3) the amount of pressure exerted on the defendant, and (4) the defendant's ability to terminate the encounter. *Id.* at 640-41.

Importantly, the factors are not exclusive and are not to be applied mechanically. *Id.* at 641. Rather, we will consider the totality of the circumstances, and our overarching inquiry is whether the officers created the sort of "police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Id.* Stopping a person to investigate a crime typically does not result in compelling circumstances, even if the person being questioned does not feel free to leave; however, *Miranda* warnings may be required if questioning involves "expressly confronting a suspect with evidence of probable cause to arrest." *State v. McMillan*, 184 Or App 63, 67-68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003); *see also State v. Gallegos-Torres*, 343 Or App 65, 70-71, 577 P3d 822 (2025) (concluding that, although the circumstances "likely were highly stressful" for the defendant, the amount of pressure exerted on the defendant did "not go far enough beyond that of a typical stop to investigate a crime to make the circumstances compelling").

Defendant contends that multiple factors support a conclusion that he was in compelling circumstances. Specifically, defendant points to evidence that he was sitting in a "dead end" grassy area, that Byrd's presence confined him such that he was unable to leave, and that the interaction began with Byrd confronting defendant with evidence of guilt. The state remonstrates that defendant was not in compelling circumstances because he was in a grassy area near a public roadway and nothing prevented him from leaving the area, the length of the encounter was only a "couple of minutes," and Byrd did not exert pressure on defendant in his questioning. As noted earlier, we conclude that the trial court did not err.

First, as to the location, although we agree with defendant's assertion that he was sitting in a "dead end" road, he was in a public space and at least 10 feet from Byrd. Moreover, Byrd testified that before he and defendant spoke, defendant "could have gotten up and walked away." As to the length of the encounter, Byrd testified that it was only a "couple of minutes," and he immediately arrested defendant and provided *Miranda* warnings after defendant made an incriminating statement. Finally, although the questions Byrd asked demonstrated that he suspected that defendant had been the driver, those questions were investigatory in nature and did not rise to the level of "confronting [defendant] with evidence of probable cause to arrest." Taking into account the totality of the circumstances, when Byrd initially approached defendant and asked him two questions about his involvement in the crash, Byrd did not create a "police-dominated atmosphere" such that *Miranda* warnings were required. Therefore, the trial court did not err in denying defendant's motion to dismiss his pre-*Miranda* statements.

Turning to defendant's final two arguments in which he contends that he could not validly waive his *Miranda* rights or consent to a blood draw because he was too intoxicated, we conclude that the trial court's factual findings are critical to our analysis. A defendant may waive his, her, or their rights under Article I, section 12, so long as the waiver is knowing, intelligent, and voluntary under

the totality of the circumstances. *State v. Nichols*, 361 Or 101, 107, 390 P3d 1001 (2017). The state has the burden to prove that the defendant validly waived those rights. *Id.* In determining whether a waiver was valid, we consider the defendant's state of mind and whether the defendant maintained the requisite level of comprehension to waive those rights. *State v. Norgren*, 287 Or App 165, 170, 401 P3d 1275 (2017), *rev dismissed*, 363 Or 40 (2018). A defendant's level of intoxication is a factor courts have considered in making that determination. *See, e.g.*, *State v. Bush*, 291 Or App 407, 417-18, 421 P3d 403 (2018) (considering that the defendant was under the influence of methamphetamine in determining whether the defendant understood his rights).

Here, there is ample evidence that defendant was under the influence of alcohol. The trial court, however, explicitly found that defendant's statements to the police were "context appropriate" and that he indicated his willingness to speak to the officers simply by volunteering information rather than waiting for a question. *See id.* at 418 (concluding that, although the defendant was intoxicated, he was capable of waiving his *Miranda* rights given that the trial court found that the defendant "asked appropriate questions" and "sought clarification" when he did not understand). The court's findings are supported by evidence adduced at the suppression hearing. For instance, as explained above, Byrd testified that defendant was "lucid" and gave "appropriate answers to questions." Thus, in our view, given those findings, the state satisfied its burden to prove that—even taking into account his intoxication—defendant knowingly, intelligently, and voluntarily waived his right to remain silent, and consented to the blood test. Accordingly, the trial court did not err in denying defendant's motion to suppress.

We turn to defendant's second assignment of error, challenging the imposition of restitution for damage to the power pole. Defendant asserts that the trial court erred when it denied his motion for a jury trial on restitution because, according to defendant, restitution is a civil proceeding that requires a jury trial under Article I, section 17, of the Oregon Constitution. Before describing the details

of defendant's argument, we begin with a brief overview of previous challenges to the imposition of restitution without a jury trial.

Article I, section 17, provides that "[i]n all civil cases the right of Trial by Jury shall remain inviolate." The Oregon Supreme Court construed earlier versions of the criminal restitution statute, ORS 137.106, originally enacted by Oregon Laws 1977, chapter 371, section 2, and determined that restitution was not a "civil case" for purposes of the jury trial right in Article I, section 17.[2] *See State v. Dillon*, 292 Or 172, 179-80, 637 P2d 602 (1981) (concluding that "restitution was clearly not intended to be the equivalent of a civil award" and emphasizing that the statute's purpose was penal rather than compensatory); *State v. Hart*, 299 Or 128, 138, 699 P2d 1113 (1985) (acknowledging that restitution "is a peculiar blend of both civil and criminal law concepts" but is not intended to be a "civil award" because of its goal of deterrence and rehabilitation for criminal defendants).[3]

Similarly, in *State v. Hval*, 174 Or App 164, 179, 25 P3d 958, *rev den*, 332 Or 559 (2001), we interpreted ORS 811.706—the restitution statute specifically for the crime of failure to perform the duties of a driver. ORS 811.706 provides that when a person is convicted of failure to perform

---

[2] ORS 137.106 (1977) provided:

"(1) When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.

"(2) In determining whether to order restitution which is complete, partial or nominal, the court shall take into account:

"(a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

"(b) The ability of the defendant to pay restitution on an instalment basis or on other conditions to be fixed by the court; and

"(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

"(3) If the defendant objects to the imposition, amount or distribution of the restitution, the court shall at the time of sentencing allow him to be heard on such issue."

[3] ORS 137.106 (1977) was amended in 1983, and therefore the statute interpreted in *Hart* was different. Or Laws 1983, ch 724, § 1. However, those amendments were minimal and did not affect the parts of the statute essential to the court's analysis.

the duties of a driver, "the court, in addition to any other sentence it may impose, may order the person to pay an amount of money equal to the amount of any damages caused by the person as a result of the incident that created the duties." We concluded that, because the award is discretionary, the person receiving the award may not be compensated in full, and because it is part of a defendant's sentence, it "has all the earmarks of a penal sanction and all of the characteristics of a conventional award of criminal restitution or reparation." *Hval*, 174 Or App at 180-81.

Defendant contends that the current version of ORS 137.106 removed the discretionary factors that focused on rehabilitation and deterrence—factors upon which the court in *Dillon* and *Hart* relied in its analysis—thus transforming the statute from having a penal function to a compensatory purpose and rendering restitution a civil proceeding.[4] The state remonstrates that, although the text of the statute now makes restitution mandatory for a victim's full economic damages, the purpose of the statute remains penal in nature and is thus not a civil proceeding. As explained below, we are not persuaded by defendant's argument that the amendments to ORS 137.106 that make restitution mandatory changed restitution proceedings into "civil cases" for purposes of Article I, section 17.

ORS 137.106 provides, in part:

> "(1)(a)　Except as provided in subsection (8) of this section, when a person is convicted of a crime, or a violation as described in ORS 153.008, that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or as provided in paragraph (b) of this subsection, evidence of the nature and amount of the damages.
>
> "* * * * *

---

[4] In 2003, ORS 137.106 underwent significant amendments that removed the discretionary factors and changed the restitution award to a mandatory award. Or Laws 2003, ch 670, § 1. Since 2003, there have been additional amendments to ORS 137.106, including changes after the underlying conduct in this case, which was in August 2022, and since the parties filed their briefs. Or Laws 2022, ch 57, § 1; Or Laws 2025, ch 360, § 3. The relevant portions of the statute, however, remain the same—specifically the mandatory nature of restitution—and thus the amendments since defendant's underlying conduct do not affect our analysis. Therefore, we refer to the current version of the statute in this opinion.

"(2)(a)  If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court. The lien, priority of the lien and ability to enforce the specific amount of restitution established under this paragraph by a supplemental judgment relates back to the date of the original judgment that is supplemented.

"* * * * *

"(4)  No finding made by the court or failure of the court to make a finding under this section limits or impairs the rights of a person injured to sue and recover damages in a civil action as provided in ORS 137.109.

"(5)(a)  If a judgment or supplemental judgment described in subsection (1) of this section includes restitution, a court may delay the enforcement of the monetary sanctions, including restitution, only if the defendant alleges and establishes to the satisfaction of the court the defendant's inability to pay the judgment in full at the time the judgment is entered. If the court finds that the defendant is unable to pay, the court may establish or allow an appropriate supervising authority to establish a payment schedule, taking into consideration the financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant. The supervising authority shall be authorized to modify any payment schedule established under this section."

Although no Oregon case has explicitly analyzed whether the amendments to ORS 137.106 changed the nature of restitution from penal to civil, the court in *State v. N. R. L.*, 354 Or 222, 234, 311 P3d 510 (2013), interpreted a similar restitution statute and concluded that restitution proceedings are not "civil" and thus that the jury trial right in Article I, section 17, does not apply.

In *N. R. L.*, the Oregon Supreme Court interpreted the juvenile restitution statute and concluded that restitution under ORS 419C.450 is "not civil in nature." 354 Or at 234. ORS 419C.450 provides, in part:

"(1)(a)    \* \* \* If the court finds from the evidence presented that a victim suffered injury, loss or damage, in addition to any other sanction it may impose, the court shall:

"(A)   Include in the judgment a requirement that the adjudicated youth pay the victim restitution in a specific amount that equals the full amount of the victim's injury, loss or damage as determined by the court[.]"

In determining that ORS 419C.450 is not a civil proceeding that requires a jury trial, the court noted that "contemporary restitution statutes always have served a combination of civil and criminal law purposes." *N. R. L.*, 354 Or at 234. The court concluded that, although courts are now mandated to impose restitution, the primary purpose of restitution is not to compensate victims; rather, restitution is a "sanction" imposed as a result of a youth's violation of a law and the fact that "imposition of that sanction is now mandatory rather than discretionary serves to highlight its penal nature." *Id.* at 233. That same reasoning applies to ORS 137.106.

Like the juvenile delinquency restitution statute, ORS 137.106 serves both civil and criminal law purposes. In arguing to the contrary, defendant notes that ORS 419C.450 focuses more on rehabilitation and allows a juvenile court discretion in how it carries out the mandatory restitution award, and thus defendant contends that the reasoning in *N. R. L.* is inapplicable to ORS 137.106. We recognize that ORS 419C.450 and ORS 137.106 are not identical; however, those variations are due to the differences between the goals of the juvenile delinquency and the criminal systems rather than a difference in purpose of their respective restitution statutes. *See, e.g.*, *State v. S.-Q. K.*, 292 Or App 836, 846, 426 P3d 659, *adh'd to as modified on recons*, 294 Or App 184, 426 P3d 258, *rev den*, 364 Or 209 (2018) (observing that "juvenile delinquency proceedings are not criminal proceedings but are, instead, something quite different—proceedings to rehabilitate children"). Therefore, we conclude that the primary reasoning in *N. R. L.* applies with equal force to ORS 137.106, which is that restitution is a "sanction" and the fact that it is now mandatory rather than discretionary "serves to highlight its penal nature."

Our conclusion is further confirmed by a footnote in *State v. Ramos*, 358 Or 581, 368 P3d 446 (2016). In *Ramos*, the court concluded that reasonable foreseeability is a limiting concept that applies to an award of "economic damages" in a restitution case. *Id.* at 596. In so doing, the court explained that, although it applied the civil law concept of reasonable foreseeability to restitution proceedings, restitution proceedings are not "civil cases":

> "We also do not mean to imply that the recovery of 'economic damages' makes a restitution proceeding into a civil proceeding. Restitution is a penalty that serves a penal purpose. As the court stated in [*N. R. L.*], the theory behind restitution is ultimately penological: It is intended to serve a rehabilitative and deterrent purpose by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim."

*Id.* at 599 n 11 (some internal quotation marks and citations omitted). Although that footnote was not essential to the resolution of the case, it illuminates the longstanding conclusion in Oregon case law that restitution cases are not "civil" for purposes of Article I, section 17, and thus do not require a jury trial.

Finally, in an alternative argument, defendant asserts that he has a right to a jury trial under the Sixth or Seventh Amendments to the United States Constitution. We have previously rejected the argument that the Sixth Amendment requires a jury trial on restitution. *See State v. McMillan A112613*, 199 Or App 398, 403, 111 P3d 1136 (2005) (concluding that the Sixth Amendment right to a jury trial does not apply to the amount of restitution). We further reject defendant's argument that the Seventh Amendment requires a jury trial because "the Seventh Amendment does not apply through the Fourteenth Amendment to the states." *Parrott v. Carr Chevrolet, Inc.*, 331 Or 537, 558 n 15, 17 P3d 473 (2001). Defendant has not challenged *McMillan* or *Parrott* or provided any meaningful argument to distinguish those controlling precedents. Accordingly, we conclude that the trial court did not err in denying defendant's motion for a jury trial in his restitution hearing.[5]

---

[5] Our rejection of defendant's challenges to the imposition of restitution is consistent with *State v. Rich*, 349 Or App ___, ___, P3d ___ (April 29, 2026) (slip

Affirmed.

op 22-25), which was issued today.